## STATE OF CONNECTICUT *v.* JOSEPH J. SANKO, JR.
(AC 18787)

Mihalakos, Pellegrino and Peters, Js.

Argued October 24, 2000—officially released February 27, 2001

*Donald D. Dakers*, special public defender, for the appellant (defendant).

*Denise B. Smoker*, assistant state's attorney, with whom, on the brief, were *Kevin T. Kane*, state's attor-

ney, and *Stephen M. Carney*, assistant state's attorney, for the appellee (state).

*Opinion*

PETERS, J. The principal issue in this appeal is whether, under the circumstances of this case, the trial court properly decided, without a jury trial, that the defendant was subject to an enhanced criminal penalty pursuant to General Statutes (Rev. to 1997) § 53a-40b.[1] In the underlying criminal proceeding, the court accepted a jury verdict finding the defendant guilty of, inter alia, two counts of manslaughter in the second degree with a motor vehicle. At the time of the defendant's criminal misconduct, he had been released on a written promise to appear pending his sentencing on an unrelated criminal conviction. The defendant failed, at trial, to raise any of the issues that he now pursues on appeal. We affirm the judgment of the trial court.

In the first part of the information, the state charged the defendant, Joseph J. Sanko, Jr., with the commission of two counts of manslaughter in the second degree with a motor vehicle in violation of General Statutes § 53a-56b,[2] one count of operating a motor vehicle while under the influence of liquor or drugs in violation of

---

[1] General Statutes (Rev. to 1997) § 53a-40b provides: "A person convicted of an offense committed while released pursuant to sections 54-63a to 54-63g, inclusive, or sections 54-64a to 54-64c, inclusive, may be sentenced, in addition to the sentence prescribed for the offense to (1) a term of imprisonment of not more than ten years if the offense is a felony, or (2) a term of imprisonment of not more than one year if the offense is a misdemeanor."

[2] General Statutes § 53a-56b provides: "(a) A person is guilty of manslaughter in the second degree with a motor vehicle when, while operating a motor vehicle under the influence of intoxicating liquor or any drug or both, he causes the death of another person as a consequence of the effect of such liquor or drug.

"(b) Manslaughter in the second degree with a motor vehicle is a class C felony and the court shall suspend the motor vehicle operator's license or nonresident operating privilege of any person found guilty under this section for one year."

General Statutes (Rev. to 1997) § 14-227a (a) (1),[3] one count of evasion of responsibility in the operation of a motor vehicle in violation of General Statutes § 14-224 (a)[4] and one count of interfering with an officer in violation of General Statutes § 53a-167a.[5] The factual predicate for these charges was the state's allegation that the defendant, while intoxicated, had driven his motor vehicle so as to cause the death of two young women walking beside a public highway and had then run from the scene of the accident. Except for the count of interfering with an officer, a jury found the defendant

---

[3] General Statutes (Rev. to 1997) § 14-227a (a) provides: "No person shall operate a motor vehicle while under the influence of intoxicating liquor or any drug or both. A person commits the offense of operating a motor vehicle while under the influence of intoxicating liquor or any drug or both if he operates a motor vehicle on a public highway of this state or on any road of a district organized under the provisions of chapter 105, a purpose of which is the construction and maintenance of roads and sidewalks, or on any private road on which a speed limit has been established in accordance with the provisions of section 14-218a, or in any parking area for ten or more cars or on any school property (1) while under the influence of intoxicating liquor or any drug or both or (2) while the ratio of alcohol in the blood of such person is ten-hundredths of one per cent or more of alcohol, by weight."

[4] General Statutes § 14-224 (a) provides: "Each person operating a motor vehicle who is knowingly involved in an accident which causes serious physical injury, as defined in section 53a-3, to or results in the death of any other person shall at once stop and render such assistance as may be needed and shall give his name, address and operator's license number and registration number to the person injured or to any officer or witness to the death or serious physical injury of any person, and if such operator of the motor vehicle causing the death or serious physical injury of any person is unable to give his name, address and operator's license number and registration number to the person injured or to any witness or officer, for any reason or cause, such operator shall immediately report such death or serious physical injury of any person to a police officer, a constable, a state police officer or an inspector of motor vehicles or at the nearest police precinct or station, and shall state in such report the location and circumstances of the accident causing the death or serious physical injury of any person and his name, address, operator's license number and registration number."

[5] General Statutes § 53a-167a (a) provides: "A person is guilty of interfering with an officer when he obstructs, resists, hinders or endangers any peace officer or fireman in the performance of his duties."

guilty as charged under the first part of the state's information.

In the second part of its information, the state alleged that, if the defendant was convicted of the charges alleged in the first part of the information, he should be sentenced in accordance with the enhanced penalty provisions of § 53a-40b. The second part of the information was based on the state's representation that the alleged criminal acts had occurred while the defendant was free on a written promise to appear following his conviction of another crime. Agreeing with the state, the court concluded that the defendant was subject to an enhanced penalty.

Applying § 53a-40b, the court sentenced the defendant to a total effective sentence of imprisonment for thirty-five and one-half years, suspended after twenty-six and one-half years, with probation of five years. The defendant has appealed.

In this court, the defendant challenges both the validity of his manslaughter conviction and the propriety of the enhanced sentence ordered by the court. We are not persuaded of the merits of any of his unpreserved claims of impropriety.

## I

## INSTRUCTIONS ON MANSLAUGHTER

The defendant challenges the validity of his manslaughter conviction only with respect to three alleged misstatements in the court's instructions to the jury. Because the defendant failed to raise any of these issues at trial, he is entitled to a review of their merits only if he properly can invoke the special rule of *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989). Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate

to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) Id., 239–40. "The first two *Golding* requirements involve whether the claim is reviewable, and the second two involve whether there was constitutional error requiring a new trial. . . . This court may dispose of the claim on any one of the conditions that the defendant does not meet." (Citation omitted.) *State* v. *Heredia*, 253 Conn. 543, 559–60, 754 A.2d 114 (2000).

The defendant claims that he is entitled to a new trial with respect to his manslaughter conviction because the court improperly instructed the jury on (1) the elements of the crime of manslaughter concerning the operation of a motor vehicle while under the influence of "intoxicating liquor and drugs and both," (2) proximate cause and (3) the significance of the defendant's mental, physical or nervous processes. Because none of these alleged defects in the court's instructions warrants *Golding* review, we affirm his conviction.

A

The defendant claims that the court improperly advised the jury that it could find him guilty of violating § 53a-56b if it found that he had been operating his motor vehicle while under the influence of either liquor or drugs, contrary to the information, which alleged that he had operated "a motor vehicle while under the influence of intoxicating liquor *and* drugs." (Emphasis added.) In its instruction to the jury on the manslaughter charges, the court advised the jury to disregard the conjunctive language of the state's information and to

convict if it found that the defendant had been driving "under the influence of *either drugs or alcohol.*" (Emphasis added.) The defendant concedes that there was an abundance of evidence proving that he was under the influence of intoxicating liquor, but claims that there was insufficient evidence to prove that he was under the influence of drugs.

This claim of instructional impropriety is not a claim of constitutional magnitude and therefore does not permit *Golding* review. "[A] factual insufficiency regarding one statutory basis, which is accompanied by a general verdict of guilty that also covers another, factually supported basis, is not a federal due process violation."[6] *State* v. *Chapman*, 229 Conn. 529, 539, 643 A.2d 1213 (1994); see *Griffin* v. *United States*, 502 U.S. 46, 112 S. Ct. 466, 116 L. Ed. 2d 371 (1991).

## B

The defendant also claims that the court improperly instructed the jury on proximate cause. He maintains that the instructions were so misleading that they violated his due process rights. We find no *Golding* violation.

The defendant argues that § 53a-56b does not require any instruction on proximate cause. This court has ruled to the contrary in *State* v. *Kwaak*, 21 Conn. App. 138, 144, 572 A.2d 1015, cert. denied, 215 Conn. 811, 576 A.2d 540 (1990). Under *Kwaak*, the court must inform the jury that the state has the burden of proving that the defendant's unlawful conduct was a proximate cause of the death of the victim. Id., 144–46.[7] An accu-

---

[6] The defendant makes a perfunctory argument that his state constitutional rights were violated. We decline to review this state constitutional claim because it is inadequately briefed. See *State* v. *Chapman*, 229 Conn. 529, 541–42, 643 A.2d 1213 (1994).

[7] Even if the defendant's argument possibly could be understood as a challenge to the accuracy of the instruction with respect to causation, he cannot prevail. See *State* v. *Spates*, 176 Conn. 227, 233–34, 405 A.2d 656 (1978), cert. denied, 440 U.S. 922, 99 S. Ct. 1248, 59 L. Ed. 2d 475 (1979).

rate jury instruction cannot be the basis for a showing that the defendant was "clearly deprived . . . of a fair trial." *State* v. *Golding*, supra, 213 Conn. 240.

## C

The defendant next claims that the court improperly defined the phrase "under the influence" in § 53a-56b and that the jury was likely to have been misled by the court's improper instructions. According to the defendant, because the statute does not state that mental state is an element of the crime, the court improperly instructed the jury to consider his mental state at the time of the offense. Furthermore, he argues that the court misled the jury by giving it disparate instructions about the meaning of "operating under the influence" under the manslaughter statute and under the statute penalizing driving while intoxicated. Again, we are persuaded that the defendant has not raised a claim that is reviewable under *Golding*.

The court instructed the jury that, to convict the defendant under the manslaughter statute, it had to find that the defendant, "as a result of drinking such [intoxicating] beverage or introducing such drug or both into his system, his mental, physical or nervous processes have become so affected that he lacks to an appreciable degree the ability to function properly in relation to the operation of his motor vehicle." This instruction was substantially similar to instructions that were approved in *State* v. *Andrews*, 108 Conn. 209, 216, 142 A. 840 (1928), and its progeny. See *State* v. *McKenna*, 11 Conn. App. 122, 129, 525 A.2d 1374, cert. denied, 205 Conn. 806, 531 A.2d 939 (1987). When the court repeated this basic instruction with respect to the count of operating under the influence, it used the same language except for a minor addition.[8] Because

---

[8] In its instructions on the manslaughter charges and in its instruction on the charge of operating a motor vehicle while under the influence of liquor or drugs, the court used virtually the same language. On the manslaughter charges, the court informed the jury that "a person is under the influence

the objections belatedly raised to the court's instructions fail to demonstrate any impropriety whatsoever, we repeat our earlier observation that an accurate jury instruction cannot be the basis for a showing that a challenged court ruling "clearly deprived the defendant of a fair trial." *State* v. *Golding*, supra, 213 Conn. 240.

## II

## ENHANCED PENALTY

The defendant's final claim is that, even if his manslaughter conviction is affirmed, his sentencing violated his constitutional rights to due process. He maintains that it was unconstitutional for the court to determine, without a jury hearing, that the defendant was subject to an enhanced penalty pursuant to § 53a-40b. See footnote 1. Although this claim also was unpreserved at trial, it warrants further inquiry because it poses a constitutional question that the courts of this state have not previously decided. We conclude that the court acted properly.

The defendant argues that a jury hearing was constitutionally required (1) to enable him to obtain an evidentiary finding about his legal status when he committed the manslaughters and (2) to determine the applicability

of intoxicating liquor or any drug or both when, as a result of drinking such beverage or introducing such drug or both into his system, his mental, physical or nervous processes have become so affected that he lacks to an appreciable degree the ability to function properly in relation to the operation of his motor vehicle." On the charge of operating a motor vehicle while under the influence of liquor or drugs, the court added to its previous instruction by stating the following: "Such person's physical or mental capabilities must have been impaired to such a degree that the person no longer has the ability to drive a vehicle with the caution characteristic of a sober person of ordinary prudence under the same or similar circumstances. Evidence of the manner in which a vehicle was operated is not determinative of whether the defendant was operating the vehicle under the influence of an intoxicating beverage, drug or both. It is, however, a factor to be considered in light of all the proven surrounding circumstances in deciding whether [the] defendant was or was not under the influence."

of the enhanced penalty statute under the factual circumstances found by the jury. We disagree.

The defendant cannot prevail on the first claim because of admissions that he made at trial. At the sentencing hearing held by the court, the defendant's counsel conceded that the manslaughters had occurred while the defendant was released on a written promise to appear following a conviction of an unrelated crime. The defendant has proffered no reason why an evidentiary hearing is required in the absence of a factual dispute. He cites no authority for that proposition, and we know of none.

The defendant likewise cannot prevail on the second claim in light of the decisions of the United States Supreme Court in *Almendarez-Torres* v. *United States*, 523 U.S. 224, 118 S. Ct. 1219, 140 L. Ed. 2d 350 (1998), and *Apprendi* v. *New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000).[9] Those cases hold that a jury hearing is not required for an enhanced sentence based on a prior conviction.[10]

We recognize that the text of § 53a-40b, reprinted in footnote 1, does not refer expressly to a prior conviction as a predicate act that triggers an enhanced penalty. It focuses, instead, on the status of the defendant at the time when the defendant committed a second crime. In this case, the status of the defendant at that time was that, after conviction of the first crime, he had been released on a written promise to appear. This set of facts surely demonstrates the applicability of § 53a-40b. We need not decide today what the reach of the statute may be under other circumstances. In most cases, if

[9] The defendant has made no claim that the Connecticut constitution affords him greater relief than that to which he is entitled under the United States constitution. Accordingly, we express no opinion on that question.

[10] We need not decide, therefore, whether the defendant properly asserted, or indeed waived, a claim for a jury hearing.

not in all, a defendant's status under the statute arises out of some antecedent encounter with the criminal justice system. The record of that antecedent encounter is a judicial record of which a court may take judicial notice. See *State* v. *Carey*, 228 Conn. 487, 497, 636 A.2d 840 (1994).

Under the circumstances of this case, therefore, decisions of the United States Supreme Court provide guidance on the due process rights that must be safeguarded in enhanced penalty proceedings following prior convictions. We find persuasive the recent discussion of this issue in the two recent cases cited previously.

In *Almendarez-Torres*, the defendant pleaded guilty to having been found in the United States after he had been deported as the result of his commission of three aggravated felonies. Although the maximum sentence for his present crime was two years in prison, under the federal enhanced penalty statute, his prior convictions exposed him to a sentence of up to twenty years. *Almendarez-Torres* v. *United States*, supra, 523 U.S. 227–29. The Supreme Court upheld the District Court's decision to subject the defendant to an enhanced penalty without giving him the benefit of a jury hearing. Id., 247.

More recently, in *Apprendi*, the United States Supreme Court reaffirmed its ruling in *Almendarez-Torres*. It concluded that, under the United States constitution, "[o]*ther than the fact of a prior conviction*, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (Emphasis added.) *Apprendi* v. *New Jersey*, supra, 530 U.S. 490.

In language particularly germane to this case, the Supreme Court observed the following: "Both the certainty that procedural safeguards attached to any 'fact'

of prior conviction, and the reality that [the defendant] did not challenge the accuracy of that 'fact' in his case, *mitigated the due process and Sixth Amendment concerns otherwise implicated in allowing a judge to determine a 'fact' increasing punishment beyond the maximum of the statutory range.*" (Emphasis added.) Id., 488. On this record as well, the defendant has conceded the fact of his prior conviction and, as far as we can tell, has failed to pursue appellate review of that conviction.

We conclude, therefore, that the court had constitutional authority to decide, without empaneling a jury, that the defendant's prior conviction triggered an enhanced penalty under § 53a-40b. In the absence of any constitutional impropriety, there is no basis for *Golding* review of the defendant's claim to the contrary.

The judgment is affirmed.

In this opinion the other judges concurred.