STATE OF CONNECTICUT *v.* LARRY LAWSON
(AC 25247)

DiPentima, McLachlan and McDonald, Js.

Argued March 28, 2006—officially released January 23, 2007

*Richard W. Callahan*, special public defender, for the appellant (defendant).

*Timothy J. Sugrue*, senior assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict*, state's attorney, and *Craig P. Nowak*, assistant state's attorney, for the appellant (state).

*Opinion*

MCDONALD, J. The defendant, Larry Lawson, appeals from the judgment of conviction, rendered after a jury trial, of evasion of responsibility in the operation of a motor vehicle in violation of General Statutes § 14-224 (a) and manslaughter in the second degree with a motor vehicle in violation of General Statutes § 53a-56b (a). The defendant claims that the court (1) improperly instructed the jury on the causation element of § 53a-56b (a) and the elements of evasion of responsibility in the operation of a motor vehicle under § 14-224 (a), and (2) improperly precluded him from presenting evidence that the victim had a trace amount of methadone in his blood at the time of the fatal accident at issue. We disagree with the defendant and affirm the judgment of the trial court.

The state presented the following evidence at the defendant's trial. On the evening of July 16, 2001, the defendant met a coworker for dinner at a restaurant after work and consumed about six beers over the course of approximately three and one-half hours before and during dinner. The defendant left the restaurant driving his pickup truck and, at approximately 10:15 p.m., approached the intersection of Boston Avenue and Mill Hill Avenue in Bridgeport at the same time that Christopher Tanych, the victim, also approached the intersection on a motorcycle from the opposite

direction. As the victim's motorcycle reached the intersection, the defendant's truck turned left into its path. According to a witness, Jackie Wilson, the defendant's truck displayed no turn signals. The victim applied his brakes and swerved, leaving a fifty-six foot skid mark, but was unable to avoid colliding with the back portion of the defendant's truck. The front part of the defendant's truck was in the victim's lane at the time. The victim was thrown from the motorcycle and died as a result of the collision.

Wilson, who had been driving behind the victim, testified that the truck then stopped, the defendant stepped out of the truck, looked, got back into the truck and "took off." Wilson followed the defendant, "cut him off" with Wilson's car and, when the defendant stopped his truck, confronted him about the accident. The defendant denied having hit anyone and drove away from Wilson. Wilson then saw the police driving toward him, flagged them down and pointed them toward the defendant.

Upon speaking to Wilson, James Kennedy, an officer of the Bridgeport police department, began to pursue the defendant with his police cruiser's lights and siren activated. The defendant stopped only after a second cruiser arrived and forced his truck to the side of the roadway. Once the police stopped the defendant, they observed that his eyes were red and glassy, his speech was slurred and that he emitted the odor of alcohol. On the basis of these observations and the results of field sobriety tests, the defendant was placed under arrest. At the state police barracks, the defendant underwent Breathalyzer tests at 12:06 a.m. and 12:39 a.m. that showed his blood alcohol content was 0.172 and 0.167, respectively.[1]

---

[1] Joel Milzoff, a toxicology expert with the department of public safety, testified that in his opinion, a person with the defendant's blood alcohol content typically experienced an impairment of visual acuity or perception, balance, reflexes, responsiveness and judgment.

At trial, the defendant testified that as he approached the intersection, the traffic light was green and he saw only an opposite approaching automobile about 100 yards away. While he was turning left, after giving a signal, he felt an impact toward the rear of his truck, saw nothing and thought someone had hit his vehicle and driven off.

The defendant also offered the testimony of Michael Cei, an accident reconstruction expert, who said that the victim had been traveling westerly and uphill into the intersection at a 7 percent grade and at thirty-eight to forty-eight miles per hour. Cei also testified that at the intersection, an easterly bound driver can see down the hill. In Cei's opinion, no road defects, deficiencies or anything about the intersection contributed in any way to the accident.

The defendant was charged in count one with evasion of responsibility in the operation of a motor vehicle in violation of § 14-224 (a), in count two with manslaughter in the second degree with a motor vehicle in violation of § 53a-56b (a) and in count three with manslaughter in the second degree in violation of § 53a-56 (a) (1). The jury found the defendant guilty of counts one and two and not guilty of the third count. The court sentenced the defendant to an effective term of ten years incarceration, execution suspended after seven years, and five years probation. This appeal followed. Additional facts will be set forth as needed.

I

The defendant claims that the court improperly instructed the jury on the causation element of § 53a-56b (a) and the elements of evasion of responsibility in the operation of a motor vehicle under § 14-224 (a).

The defendant concedes that his claims of instructional impropriety were not properly preserved and

argues that he is entitled to review under *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989), because of the constitutional magnitude of his claims[2] or under the doctrine of plain error.[3] Practice Book § 60-5.

We will review these claims because the record is adequate for review, and the defendant has raised claims that the jury was not instructed on essential elements of the offenses, which is of constitutional magnitude. See *State* v. *Dubose*, 75 Conn. App. 163, 174, 815 A.2d 213, cert. denied, 263 Conn. 909, 819 A.2d 841 (2003). The state does not, in arguing the issue of reviewability, raise either the failure of the defendant to file a request to charge as to intervening cause or his failure to take exception to the charge. It also does not raise the effect of the defendant's having been given a written copy of the charge prior to the delivery of the charge to the jury and his failure to request the trial judge to augment the instruction as he now argues on appeal.[4]

---

[2] Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40. "*Golding*'s first two prongs relate to whether a defendant's claim is reviewable, and the last two relate to the substance of the actual review." *State* v. *Miller*, 95 Conn. App. 362, 380 n.10, 896 A.2d 844, cert. denied, 279 Conn. 907, 901 A.2d 1228 (2006).

[3] "The plain error doctrine is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . A party cannot prevail under plain error unless it has demonstrated that the failure to grant relief will result in manifest injustice." (Internal quotation marks omitted.) *State* v. *Martinez*, 95 Conn. App. 162, 170 n.5, 896 A.2d 109, cert. denied, 279 Conn. 902, 901 A.2d 1224 (2006). We conclude that plain error review is not warranted in this case.

[4] We note that the trial transcript reveals that the court, after a charging conference, prepared a written draft of the charge. The parties were given

## A

The defendant first claims that the court improperly instructed the jury on the causation element of § 53a-56b (a).[5] He maintains that the court failed to give a sufficient charge on proximate cause by not explaining the doctrine of intervening cause.[6] He argues that in

a copy of the draft the next morning, and a meeting then was held with the court in which the parties agreed on a change in the written draft not pertaining to any issue in this appeal. The remaining charge was found to be acceptable to both the state and the defendant. When the court inquired on the record, the defendant, along with the state, stated that he accepted the charge as drafted.

In *State* v. *Brunetti*, 279 Conn. 39, 55, 901 A.2d 1 (2006), our Supreme Court observed that parties should be encouraged to raise claims in a timely manner when it is not too late for the trial court to address the claim. In this case, the defendant's acceptance of the draft instructions under the circumstances has attributes similar to claims that the court has rejected under the doctrine of induced error, that is, "[a]n error that a party cannot complain of on appeal because the party, through conduct, encouraged or prompted the trial court to make the erroneous ruling. . . . This principle bars appellate review of induced nonconstitutional error and induced constitutional error." (Citation omitted; internal quotation marks omitted.) Id., 59 n.32.

[5] General Statutes § 53a-56b (a) provides: "A person is guilty of manslaughter in the second degree with a motor vehicle when, while operating a motor vehicle under the influence of intoxicating liquor or any drug or both, he causes the death of another person as a consequence of the effect of such liquor or drug."

[6] The court instructed the jury on proximate cause as follows: "For you to find the defendant guilty of this charge, the state must prove the following elements beyond a reasonable doubt. First, that the defendant caused the death of Christopher Tanych while operating a motor vehicle. . . . The state has the burden of proving beyond a reasonable doubt that the death of Christopher Tanych was caused by the accused while operating a motor vehicle. . . . The state must prove beyond a reasonable doubt that the defendant caused the death of Christopher Tanych. Proximate cause does not necessarily mean the last act or cause or . . . the act in point of time nearest to the death of Christopher Tanych. The concept of proximate cause incorporates the notion that an accused may be charged with a criminal offense, even though his acts were not the immediate cause of the death of Christopher Tanych. . . . [A]n act or an omission to act is a proximate cause of the death of Christopher Tanych if it substantially and materially contributes in a natural and continuous sequence unbroken by an efficient intervening cause to the death of Christopher Tanych. It is a cause without which the death of Christopher Tanych would not have occurred. And a predominating cause. A substantial factor from which the death of Christopher Tanych follows as a natural, direct and immediate consequence. It

this case, the evidence warranted an intervening cause instruction because certain acts or omissions of the victim constituted an intervening cause to relieve the defendant of criminal responsibility.

Our Supreme Court has stated that "whether a jury instruction is improper is gauged by considering the instruction in its entirety, and with reference to the facts and evidence in the case, so as to determine whether it fairly presented the case to the jury so that no injustice was done under established legal rules." *State* v. *Munoz,* 233 Conn. 106, 120, 659 A.2d 683 (1995). In so doing, the evidence must be viewed favorably to the defendant. Id., 122.

The defendant, citing *State* v. *Kwaak,* 21 Conn. App. 138, 572 A.2d 1015, cert. denied, 215 Conn. 811, 576 A.2d 540 (1990), argues that the causation element "requires that the state prove beyond a reasonable doubt, first that the death of a person would not have occurred 'but for' the defendant's intoxication, and second, that the defendant's intoxication substantially and materially contributed to the death of a person in a natural and continuous sequence, unbroken by an efficient, intervening cause. In order to determine that the state has not met its burden of proof on this element, the jury must find either that the defendant's intoxication was not the actual 'but for' cause of the victim's death or that there was an 'independent and efficient cause' . . . or an intervening and efficient cause." (Citation omitted.) Id., 146.

Our Supreme Court, in *State* v. *Munoz,* supra, 233 Conn. 121, discussed jury instructions with respect to proximate cause and the inclusion of intervening cause

does not matter whether this particular kind of harm that results from the defendant's act was intended by the defendant. When the death of Christopher Tanych was caused by the defendant's conduct, a foreseeable and natural result of that conduct, the law considers the chain of legal causation unbroken and holds the defendant criminally responsible."

language. The court stated: "[W]hen several factors contribute, in a chain of events, to cause a victim's injury, in order to be the proximate cause of that injury, the defendant's conduct must have been a cause that necessarily set in operation the factors that accomplish the injury. In short, a jury instruction with respect to proximate cause must contain, at a minimum, the following elements: (1) an indication that the defendant's conduct must contribute substantially and materially, in a direct manner, to the victim's injuries; and (2) an indication that the defendant's conduct cannot have been superseded by an efficient, intervening cause that produced the injuries." (Internal quotation marks omitted.) Id.

Our Supreme Court emphasized that *"the requirement of language in the jury instructions regarding an efficient, intervening cause is not ironclad.* It arises in those cases in which the evidence could support a finding by the jury that the defendant's conduct was overcome by an efficient, intervening cause, or in which the evidence regarding proximate causation was such that, based on the doctrine of efficient, intervening cause, the jury could have a reasonable doubt about the defendant's guilt." (Emphasis added.) Id., 121 n.8.

"The doctrine of intervening cause . . . refers to a situation in which the defendant's conduct is a but for cause, or cause in fact, of the victim's injury, but nonetheless some other circumstance subsequently occurs—the source of which may be an act of the victim, the act of some other person, or some nonhuman force—that does more than supply a concurring or contributing cause of the injury, but is unforeseeable and sufficiently powerful in its effect that it serves to relieve the defendant of criminal responsibility for his conduct. . . . Thus, the doctrine serves as a dividing line between two closely related factual situations: (1) where two or more acts or forces, one of which was set in motion by the defendant, combine to cause the

victim's injuries, in which case the doctrine will not relieve the defendant of criminal responsibility; and (2) where an act or force intervenes in such a way as to relieve a defendant, whose conduct contributed in fact to the victim's injuries, from responsibility, in which case the doctrine will apply." (Internal quotation marks omitted.) Id., 124–25; see *State* v. *Arrington*, 81 Conn. App. 518, 522–23, 840 A.2d 1192, cert. granted on other grounds, 268 Conn. 922, 846 A.2d 881 (2004) (appeal withdrawn, judgment vacated April 21, 2005).

A review of the jury instruction reveals that with regard to that part of the instruction on intervening cause, there was at least an indication that the defendant's conduct cannot have been superseded by an efficient, intervening cause that produced the injuries, thus satisfying the minimum requirement for a jury instruction on proximate cause. See *State* v. *Arrington*, supra, 81 Conn. App. 523.

Even if we were to conclude, however, that an instruction on the doctrine of intervening cause was not sufficiently detailed, the instruction would not be improper considering the evidence in this case, viewed favorably to the defendant. The evidence was that the victim's motorcycle skidded at the intersection and collided with the defendant's vehicle, which was turning left into, and remained in, the path of the victim's oncoming motorcycle. The defendant argues that the actions or omissions of the victim were an efficient, intervening cause of the collision. He cites the evidence that the victim was operating the motorcycle without a license, was speeding and skidded. That conduct reasonably could only be considered concurrent causes rather than unforeseen events that occurred subsequent to the defendant's negligent act of turning left into the victim's line of travel at the intersection. See id., 524. We conclude that the evidence, viewed in favor of the

defendant, did not warrant an instruction on the doctrine of intervening cause. Finally, the court's charge expressly stated that the connection between the defendant's conduct and the victim's death had to be "direct" and that the victim's death had to have been "caused" by the defendant's conduct as a "foreseeable and natural result" of that conduct. Accordingly, we conclude that the jury was not misled by the instruction as given.

B

The defendant next claims that the court improperly instructed the jury[7] on the elements of evasion of

[7] The jury instruction on the crime of evasion of responsibility in the operation of a motor vehicle was as follows: "The defendant is charged with the crime of evasion of responsibility in the operation of a motor vehicle in violation of § 14-224 (a) . . . which provides as follows. Each person operating a motor vehicle who is knowingly involved in an accident which causes serious physical injury or results in the death of any other person shall at once stop and render such assistance as may be needed and shall give his name, address and . . . operator license number and registration number to the person injured or to any officer or witness to the death or serious physical injury. Or if any such operator of the motor vehicle causing the death or serious injury of any person is unable to give his name, address and operator's license number and registration number to the person injured or to any witness or officer for any reason or cause, such operator shall immediately report such death or serious physical injury of any such person to a police officer, a constable, a state police officer or an inspector of motor vehicles or at the nearest police precinct or station, and shall state in such report the location and circumstance of the accident causing the death or serious physical injury of any person and his name, address, operator's license number and registration number.

"For you to find the defendant guilty of this charge, the state must prove the following elements beyond a reasonable doubt. That the defendant, while operating a motor vehicle, was knowingly involved in an accident. That the accident caused serious physical injury or resulted in the death of another person. The defendant failed to stop at once and rendered such assistance as may be needed and, or, failed to give his name, address or operator's number and registration number to the person injured or to any officer or witness to the death or physical injury, or if he was prevented [by] any cause from doing so, that he immediately reported such death or serious physical injury to any person or police officer, constable, state police officer or inspector of motor vehicles or at the nearest police precinct or station, and that in such report stated the location, circumstances of the

responsibility in the operation of a motor vehicle under § 14-224 (a).[8] He first argues that the court's use of the word "prevent" instead of the word "unable" misled the jury. The defendant argues that the court improperly instructed the jury that it needed to find that some outside force caused the defendant to be unable to report the information, as opposed to the defendant's being unable to report for any cause or reason. He then

accident causing the death or serious physical injury of any such person and his name, address, operator's license number and registration number.

"The state has the burden of proving beyond a reasonable doubt that the accused was operating a motor vehicle which was involved in the accident and that the accused knew he was involved in an accident. With regard to the second element, the state must show beyond a reasonable doubt that the accident resulted in the death of a person or serious physical injury. With respect to the final element, the state must show beyond a reasonable doubt that the accused failed to stop and render such assistance as may be needed or to provide the injured party or an officer or witness to the accident with information concerning his identity or if he was unable to do so, that he immediately reported such death or serious physical injury to a police officer, constable, state police officer or inspector of motor vehicles or at the nearest police precinct or station.

"If you find that the state has proven beyond a reasonable doubt each of these elements of the crimes of evasion of responsibilities, then you shall find the defendant guilty. On the other hand, if you find that the state has failed to prove beyond a reasonable doubt any of the elements, then you must find the defendant not guilty."

[8] General Statutes § 14-224 (a) provides: "Each person operating a motor vehicle who is knowingly involved in an accident which causes serious physical injury, as defined in section 53a-3, to or results in the death of any other person shall at once stop and render such assistance as may be needed and shall give his name, address and operator's license number and registration number to the person injured or to any officer or witness to the death or serious physical injury of any person, and if such operator of the motor vehicle causing the death or serious physical injury of any person is unable to give his name, address and operator's license number and registration number to the person injured or to any witness or officer, for any reason or cause, such operator shall immediately report such death or serious physical injury of any person to a police officer, a constable, a state police officer or an inspector of motor vehicles or at the nearest police precinct or station, and shall state in such report the location and circumstances of the accident causing the death or serious physical injury of any person and his name, address, operator's license number and registration number."

argues that the court's charge failed to instruct and guide the jury properly on the alternative elements of § 14-224 (a) because it "should have charged the jury that if the defendant was arrested by police while trying to render such assistance as the defendant deemed reasonably necessary . . . then compliance with the remaining duties of the statute are legally excused."

As to the first contention, viewing the charge as a whole, we conclude that the court's use of the word "prevent" was harmless. We are not persuaded that there was any prejudice in the court's substitution of the phrase "if he was prevented [by] any cause" for "if . . . [he] was unable, for any reason or cause." The defendant fails to draw a satisfactory distinction between the two phrases. Moreover, it is unlikely that he was prejudiced if the jury believed that it needed to find that some outside force caused the defendant to be unable to report the accident. The defendant presented his theory of defense to the jury that he could not comply with the reporting requirement because he was stopped and prevented from doing so by the police, an outside force.

Turning to the defendant's second argument, we can find no authority, and the defendant cites none, that requires the court to charge the jury that compliance with the remaining duties of § 14-224 (a) are legally excused if the defendant was arrested by police while trying to render such assistance as the defendant deemed reasonably necessary.

The defendant argues that he left the scene in order to find an ambulance or police vehicle at a nearby hospital to assist the victim. That he was stopped in this very pursuit by the police, he maintains, should excuse any remaining compliance with the statute. We disagree.

We stated in *State* v. *Rosario*, 81 Conn. App. 621, 629–31, 841 A.2d 254, cert. denied, 268 Conn. 923, 848 A.2d 473 (2004), a decision that was released after this case was tried, that § 14-224 "does not leave an operator an excuse for failing to stop for any reason as it does for failing to give the required information at the scene. . . . [T]he legislative history establishes that the failure to stop immediately cannot be cured at some later time by an operator reporting the incident to the police. . . . The essence of the offense of evading responsibility is the failure of the driver to stop and render aid."

The jury reasonably could have found that the defendant failed to stop immediately and render assistance, and that leaving the scene of the accident and driving away was not in compliance with the statute.

Finally, "[a]n accurate jury instruction cannot be the basis for a showing that the defendant was clearly deprived . . . of a fair trial." (Internal quotation marks omitted.) *State* v. *Sanko*, 62 Conn. App. 34, 40–41, 771 A.2d 149, cert. denied, 256 Conn. 905, 772 A.2d 599 (2001), quoting *State* v. *Golding*, supra, 213 Conn. 240. We find no *Golding* violation.[9]

II

The defendant claims that the court improperly precluded him from presenting evidence that the victim had a trace amount of methadone in his blood at the time of the accident. We do not agree.

The following additional facts are relevant to the resolution of this issue. Evidence indicated that the victim was pronounced dead moments after his arrival

[9] As we noted as to the charge concerning proximate cause, the defendant not only failed to submit a request to charge and took no exception as to the charge, but following a charging conference, he also accepted the charge in a written draft that was given to him prior to the charge being given to the jury. See footnote 4.

at a hospital, less than thirty minutes after the crash. Prior to the commencement of trial, the court held a hearing on the state's motion in limine to preclude evidence that a trace amount of methadone was detected in the victim's blood at the autopsy. In support of its motion, the state presented the testimony of Sherwood Lewis, the director of toxicology for the office of the chief medical examiner, who holds advanced degrees in microbiology and molecular biology. He testified that a trace amount of methadone represents an extremely small amount, "[s]o low in fact that we do not attempt to quantify." Lewis testified that methadone is used to replace the need for the opiate heroin pharmacologically and that unlike heroin, methadone does not cause a high.[10] He arrived at no conclusion as an analytical toxicologist as to the effect methadone might have had on the reflexes or impairment of the victim. This was not his area of expertise. Lewis could offer no opinion as to what effect a trace amount of methadone would have in the operation of a motor vehicle or motorcycle in this instance.

The court found that Lewis claimed to have no expertise as to the impairment effect of a trace of methadone. As to the reference in the autopsy report to a trace amount of methadone, the court required that the effects of a trace amount of methadone on motor skills or judgment must be shown by testimony from a qualified expert. The court granted the motion to preclude that evidence but stated that it would consider any evidence that the defendant could present to show the effect of the trace amount of methadone on a driver's impairment. At this, defense counsel stated that "[t]here

[10] Medically prescribed methadone is used for treatment of heroin addicts to relieve withdrawal symptoms, reduce opiate cravings and bring about a biochemical balance in the body. See Office of National Drug Control Policy, "Fact Sheet: Methadone," (April 2000) at http://www.whitehousedrugpolicy.gov/publications/pdf/ncj175678.pdf.

is no percentage whatsoever that anybody could testify to as to whether [it] did or did not impair the ability of this particular driver." Defense counsel also stated he did not "know that anybody could testify to that."[11] On

---

[11] The following exchange occurred at the hearing on the state's motion in limine to preclude the toxicology report with respect to trace amounts of methadone in the victim's blood.

"The Court: Now, the motion in limine, I think, at this point, if you're going to want the toxicology report to come in with respect to trace amounts of methadone, you're going to have to show the relevancy of that. Do you have someone who can testify as to that? . . .

"[Defense Counsel]: I don't think that's my obligation, Your Honor. I do think that the jury knowing what methadone is used for, take it, and that's all, I—just what is it used for. Then, taken in conjunction with the other factors involved in the accident will—

"The Court: No, it's not going to come in unless you show some relevancy.

"[Defense Counsel]: Well, then under the circumstances of what occurred this morning, we will need some time to get an expert and incur an additional expense.

"The Court: Well, you have a week.

"[Defense Counsel]: I don't think that's enough to do this.

"The Court: I'm going to grant the motion in [limine] subject, however, to your right as part of your case to demonstrate the relevance of that to the facts of this case.

"[Defense Counsel]: Is the court saying that if the jury hears that methadone is used as a replacement for heroin and that under the circumstances, a man was operating a motor vehicle and the facts of the accident as they occur, the jury is not entitled to hear that?

"The Court: You're absolutely right unless you can show that methadone in some amounts, and particularly in the amount found in the toxicology report, is relevant to the question of impairment.

"[Defense Counsel]: Your Honor, if the state is arguing it's prejudicial to the state's case, I submit that the test is whether it's prejudicial to the defendant, not the state, because all evidence is prejudicial to one party or another. It's a question as to whether the probative value of it outweighs—

"The Court: No, this . . . is a question of relevancy. . . . You could bring in all kinds of things about the individual that, you know, he was suffering from AIDS or something like that. But it wouldn't be relevant to the issues of this case. . . .

"[Defense Counsel]: I don't see how the court can . . . redact an official document of the state of Connecticut with respect to the findings made by its officials.

"[The Prosecutor]: . . . In light of . . . the ruling on the state's motion, I would ask that until . . . the court changes its mind after [defense counsel] provides whatever further information he's going to provide, I would ask that the state report with regard to the victim, if attempted to be brought into evidence by the defendant, be redacted as to the presence of methadone . . . for the reasons stated in the state's brief . . . .

the first day of trial, the court asked the defendant if he had a witness "with respect to the issue of . . . methadone." The defendant responded that he did not. The matter never again was revisited.

The defendant argues on appeal that the court should have allowed the jury to consider the victim's having had a trace of methadone in his blood upon autopsy

"The Court: . . . I don't see how it comes in, redacted or not. . . . I don't see its relevance. I don't think it's part of your case-in-chief to show that he was not under the influence of alcohol. I don't see that it comes in at all unless and until somebody can show its relevancy. If you have an expert to that effect, I think you're going to have to notice it to the defense. . . . All right. I'm going to grant the motion in limine. If you have something that would demonstrate the relevancy of this, we'll . . . call your expert and we'll hear it outside the presence of the jury, and I'll rule on relevancy and I'll modify my ruling in this motion in limine to the extent it's warranted by the evidence you're prepared to present.

"[Defense Counsel]: I would say, Your Honor, with all due respect, I just think you're precluding the ability of the defendant to present a defense and putting the burden upon him to show that not only did alcohol not cause the accident, which is our burden, but to basically take away from the jury's consideration a factor found. There is no percentage whatsoever that anybody could testify as to whether he did or did not impair the ability of this particular driver. I don't know that anybody could testify to that. I do know that to the extent of what the general effect—one does not know whether it is coming up from something, coming down from something and how it affects that individual because we don't know the individual.

"The Court: . . . [T]he effects of alcohol upon the operator of a motor vehicle is within the common knowledge of, I think, a jury. I think that that is something that they can take. I don't know myself, and I don't think the average juror has any notion as to whether methadone affects motor skills or judgment or anything of that nature. I surely don't know that.

"[Defense Counsel]: Well, to the extent that our legislature has created a separate crime for driving under the influence of drugs without specifying, going into specificity that alcohol has—

"The Court: I agree. But is methadone a drug that can influence somebody?

"[Defense Counsel]: Well, if heroin can, and it's an opiate, then methadone can as well. . . .

"The Court: . . . I don't follow that logic at all. And I think you're going to have to show that. Maybe a physician can—a pharmacologist or someone of that nature perhaps can supply that information. But I think the reasoning that because in certain instances methadone replaces heroin, it must necessarily mimic it in all respects I think is a leap that I think you're going to be inviting the court to take and the jury to take that's inappropriate. I think you're going to have to tie it in with some evidence if you want to get it before the jury. Otherwise it's irrelevant. . . . It's out until you connect it to something."

without testimony as to the effect of the drug on the victim's ability to operate the motorcycle. He cites *State v. Padua*, 273 Conn. 138, 146, 869 A.2d 192 (2005), in support of this claim. We disagree.

In *Padua*, our Supreme Court held that the effects of marijuana were sufficiently well known to support a finding of risk of injury to a child from exposure of the drug to young children who might consume the drug in the absence of expert evidence as to the effect of consuming marijuana. Id., 157. In the present case, the effect of a trace amount of methadone on the victim would be relevant only if that trace amount affected the victim's ability to operate a motorcycle. Defense counsel's concession that impairment from an unknown amount of methadone could not be determined by a witness supports the court's ruling. Also, unlike the effects of marijuana, the effects of a trace amount of methadone on driving impairment is not a matter of common knowledge, experience and common sense; therefore, expert evidence would be required.[12] Cf. *State*

---

[12] The differing conclusions among various medical and governmental resources further support the court's conclusion that driver impairment from a trace amount of methadone is beyond the ken of the average juror. Methadone's effect on driving, in quantities dispensed by physicians, is said not to interfere with driving a car. Office of National Drug Control Policy, "Fact Sheet: Methadone," (April 2000) at http://www.whitehousedrugpolicy.-gov/publications/pdf/ncj175678.pdf. The Physician's Desk Reference cautions generally that patients be warned that "[m]ethadone may impair the mental and/or physical abilities required for . . . driving a car . . . ." Physician's Desk Reference: Generics 2041 (1996). The National Highway Traffic Safety Administration assessed the driving risks of methadone as: "Moderate to severely impairing in naive or non-tolerant individuals, causing *dose-dependent* reductions in reaction time, visual acuity and information processing. Significant psychomotor impairment is *not expected* in tolerant individuals." (Emphasis added.) National Highway Traffic Safety Administration, "Drugs and Human Performance Fact Sheets: Methadone," at http://www.nhtsa.dot.gov/people/injury/research/job185drugs/methadone.htm. Another medical journal indicates that "narcotic-tolerant subjects apparently can be stabilized on methadone replacement therapy with few subjective or objective effects on performance," though "[n]o experiments have been conducted that employed actual driving maneuvers." R. Baselt, Drug Effects on Psychomotor Performance 243 (2001).

v. *Scruggs*, 279 Conn. 698, 715–16, 905 A.2d 24 (2006). Last, we conclude that the exclusion of the methadone evidence did not prejudice the defendant because there was no evidence that any impairment could constitute an independent and intervening cause of the collision. See parts I A and B of this opinion.

The judgment is affirmed.

In this opinion the other judges concurred.