WATERMAN, Justice
(dissenting).
I respectfully dissent because I conclude the evidence was sufficient to sustain Scho-ries’s conviction for operating a motor vehicle while under the influence of a controlled substance in violation of Iowa Code section 321J.2(l)(c) (2009), notwithstanding his defense that he was prescribed methadone by Dr. Daniel Baldi. The majority usurps the role of the jury by dissecting the State’s rebuttal of the prescription-drug defense into separate, distinct theories and finding the evidence insufficient for each unique theory viewed in isolation. That is not how the case was tried and submitted to the jury that convicted Schories, nor should that approach govern appellate review for sufficiency. It was undisputed that Schories had methadone in his system when driving and the only fighting issue was whether he was using it in compliance with instructions. We must examine the entire trial record in the light most favorable to the verdict. The aggregate evidence was more than sufficient to support the jury’s rejection of his prescription-drug defense. See Iowa Code § 321J.2(7)(6) (requiring proof defendant took prescribed drug as instructed by his physician and the labeling directions of the pharmacy).
Schories was lawfully stopped by Officer Boone for erratic driving — speeding, repeated lane changes, and tailgating. The majority equates Schories’s manner of driving to that of many sober drivers. But, neither Schories nor the majority contends Officer Boone lacked probable cause for this traffic stop. Next, we have Officer Boone’s close observation of Schories’s symptoms and behavior on the side of the road and at the police station. Officer Boone testified Schories had “improper balance” and moved slowly getting out of the vehicle. His speech was slurred. His coordination was off. He displayed visible signs of impairment on several field tests for sobriety. He failed to touch his finger to his nose four times out of six. He “sway[ed] back and forth” when asked to tilt his head back. He showed three signs of impairment on the walk-and-turn test. He had watery, bloodshot eyes; eye tremors; droopy eyelids; and constricted pupils. He failed an eye convergence test that eighty percent of people can pass when sober. Officer Boone, based on all his personal observations, testified he believed Schories was under the influence of a narcotic. The majority, relying on its review of the cold transcript, characterizes Schories’s behavior and symptoms the night of his arrest as “comparatively mild.” I defer to the jury that apparently had a different take on Officer Boone’s live testimony.
Schories had needle track marks on his arm and a syringe within his reach in the vehicle he was driving alone. He had both methadone and hydromorphone pills with him. Schories tested positive for methadone in his urine.
The pharmacy’s instructions accompanying Schories’s methadone prescription state: “This drug may make you dizzy or *669 drowsy. Do not drive, use machinery, or do any activity that requires alertness until you are sure you can perform such activity safely.” Dr. Baldi testified methadone is addictive and has a long half-life. Dr. Baldi further testified he will make adjustments for patients who report methadone affects their driving. Schories had been taking prescription methadone for two years — ample time to work with Dr. Baldi on the appropriate dosages to avoid impaired driving. Schories was to take the methadone orally. Injecting it would constitute abuse. Schories offered no explanation at trial for the syringe in his passenger compartment or the needle tracks on his arm.
Officer Boone’s unthinking disposal of the syringe in the biohazard container is regrettable. The opportunity was lost to test the syringe for methadone or the DNA of Schories or another. But, the majority stops short of contending evidence of the syringe should have been suppressed, a remedy defense counsel never requested at trial. The jury was entitled to consider the presence of the syringe in the vehicle within Schories’s reach, together with the needle tracks on his arm and his multiple behavioral and symptomatic signs of impairment.
The foregoing evidence in the aggregate was sufficient for a jury to find Schories either injected the methadone or ingested too much, contrary to the instructions from his physician or pharmacy.
The majority errs by rejecting an injection theory based on Officer Boone’s speculation the needle tracks on the arm were not made “within the last few hours” because there was no pus oozing out at the time of his arrest. I find it inconsistent for the majority to credit Officer Boone’s lay opinion on the age of Schories’s needle marks while rejecting Officer Boone’s opinion that Schories was under the influence of a narcotic based on his observed behavior and symptoms. An appellate court should not cherry-pick testimony from the same witness to believe and disbelieve in the guise of determining the sufficiency of the evidence. It is the jury’s role to weigh the evidence and decide what testimony is credible.
Theoretically, it is possible that Schories was using methadone in compliance with his physician’s instructions, despite his erratic driving, his drugged appearance, the syringe in the car, and the track marks on his arm. But, a jury was entitled to find otherwise.
The jury reasonably could conclude at least one of the needle tracks was less than a day old or infer Schories injected himself in a fresh spot Officer Boone did not examine, or find that at the time of his arrest Schories remained impaired by methadone previously injected in his arm. On this record, a reasonable jury could find Schories violated Dr. Baldi’s instructions by injecting the methadone. Alternatively, the jury could find Schories took more methadone in pill form than permitted by the labeling instructions.
The majority opinion will require expert testimony in more OWI, prescription-drug-defense cases. The majority asserts: “Without expert testimony, the evidence is not sufficiently strong to allow a reasonable jury to conclude beyond a reasonable doubt that Schories was abusing rather than simply using methadone according to his prescription.” Thus, the majority questions the lack of evidence that methadone can be injected and faults the lack of expert testimony as to how long injected methadone would remain detectable in a person’s urine. Yet, the majority cites no Iowa case or other persuasive authority requiring expert testimony to show defendant was abusing a prescription drug when other signs of impairment are present. *670 The two cases cited by the majority do not support requiring expert testimony here.
The majority relies solely on State v. Lawson, 99 Conn.App. 233, 913 A.2d 494, 504-05 (2007), for the proposition that “expert testimony is required to link a trace amount of methadone to a driving impairment.” (Emphasis added.) Yet, that case is inapposite. There, the appellate court affirmed the conviction of a drunk driver who caused a fatal collision by turning into the path of the victim-motorcyclist, who braked and swerved but was unable to avoid the impact. Lawson, 913 A.2d at 496. “The victim was thrown from the motorcycle and died as a result of the collision.” Id. An autopsy revealed a trace amount of methadone in the victim’s blood. Id. at 503. There was no evidence the victim was driving erratically or was otherwise impaired. Lawson argued the jury should have been allowed to consider evidence of the trace amount of methadone in the victim’s blood, despite the lack of any “testimony as to the effect of the drug on the victim’s ability to operate the motorcycle.” Id. at 504. The appellate court disagreed and affirmed Lawson’s conviction because “there was no evidence that any impairment [of the victim] could constitute an independent and intervening cause of the collision.” Id. at 505. Lawson simply did not adjudicate whether expert testimony is required to prove a defendant was abusing methadone.
The second case cited by the majority actually affirmed the defendant’s conviction for impaired driving without expert testimony and reversed the intermediate appellate court decision requiring expert testimony. See State v. Bealor, 187 N.J. 574, 902 A.2d 226, 237-38 (2006). The majority merely cites Bealor for the proposition that “expert testimony is preferred on a cause of intoxication other than alcohol.” (Emphasis added.) I agree. Expert testimony may well assist the jury in prescription-drug-defense cases, but should not be required when other admissible evidence supports the finding of impaired driving. Indeed, in Bealor, the New Jersey Supreme Court held that the arresting officer’s lay observations of defendant’s impairment and the presence of marijuana in his bloodstream were sufficient to convict him, without expert testimony the drug impaired his driving. Id. at 236 (“The aggregate of those proofs was more than sufficient to permit the fact-finder to conclude, beyond a reasonable doubt, that the defendant violated the driving while intoxicated statute.”). The same is true here.
In contrast to these two cases, I would commend to the majority the well-reasoned decision of the Pennsylvania Supreme Court, which specifically rejected an expert testimony requirement in a similar case involving impaired driving and a prescription-drug defense. See Commonwealth v. Griffith, 613 Pa. 171, 32 A.3d 1231, 1238-39 (2011).
Prescription-drug abuse is a growing problem nationally and in Iowa. Our laws prohibiting impaired driving are intended to save lives and make our roads safer. See State v. Comried, 693 N.W.2d 773, 775-78 (Iowa 2005) (affirming conviction for vehicular homicide based on trace amount of methamphetamine in defendant’s blood). We noted the purpose of Iowa Code chapter 321J is “to reduce the holocaust on our highways” caused in part by intoxicated drivers. Id. at 775 (citation and internal quotation marks omitted). In State v. Garcia, 756 N.W.2d 216 (Iowa 2008), we reiterated that the purpose of chapter 321J is “ ‘to help reduce the appalling number of highway deaths resulting in part at least from intoxicated drivers.’ ” Garcia, 756 N.W.2d at 220 (quoting State v. Wallin, 195 N.W.2d 95, 96 (Iowa 1972)). We should not undermine chapter *671 321J by playing Monday morning quarterback to second-guess juries or by superimposing a requirement of expert testimony when the aggregate record evidence is sufficient to prove prescription-drug abuse. Unfortunately, the majority’s de facto expert testimony requirement will raise the cost of prosecuting OWIs based on prescription-drug abuse.
The district court correctly denied Scho-ries’s motion for judgment of acquittal challenging the sufficiency of the evidence. Schories raised other issues including errors in the jury instructions. I agree with Schories that the jury instructions given may have confused the jury as to who had the burden of proof concerning his prescription-drug defense. The instructional error entitles him to a new trial. I will refrain from addressing the other issues not reached by the majority because its holding today requires dismissal of the charges against him without a retrial.
MANSFIELD and ZAGER, JJ, join this dissent.