STATE OF CONNECTICUT *v.* KENNETH MYERS
(SC 17925)

Norcott, Katz, Vertefeuille, Zarella and Schaller, Js.

Argued October 21, 2008—officially released February 3, 2009

*James M. Ralls,* assistant state's attorney, with whom, on the brief, was *Stephen Sedensky III,* state's attorney, for the appellant (state).

*Alice Osedach,* assistant public defender, for the appellee (defendant).

*Opinion*

ZARELLA, J. The sole issue in this certified appeal is whether the Appellate Court properly concluded that the trial court committed plain error when it sentenced the defendant, Kenneth Myers, as a repeat offender. The state appeals from the judgment of the Appellate Court, which vacated the defendant's sentence on the ground that the trial court committed plain error when it sentenced the defendant as a repeat offender under General Statutes § 21a-277 (a)[1] without first obtaining a plea from the defendant and, if necessary, conducting a trial on the issue as Practice Book § 42-2[2] requires.

---

[1] General Statutes § 21a-277 provides in relevant part: "(a) Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person any controlled substance which is a hallucinogenic substance other than marijuana, or a narcotic substance, except as authorized in this chapter, for a first offense, shall be imprisoned not more than fifteen years and may be fined not more than fifty thousand dollars or be both fined and imprisoned; and for a second offense shall be imprisoned not more than thirty years and may be fined not more than one hundred thousand dollars, or be both fined and imprisoned . . . ."

[2] Practice Book § 42-2 provides: "When an information is divided into two parts under Section 36-14, on a finding of guilty on the first part of the information, a plea shall be taken and, if necessary, election made on the second part and the trial thereon proceeded with. If the defendant elects a jury trial on the second part of the information, such trial may be had to

The state claims that it was not plain error for the trial court to forgo a "part B" trial under the factual and procedural circumstances of this case. We agree with the state and, accordingly, reverse in part the judgment of the Appellate Court.

The following undisputed facts and procedural history are relevant to this appeal. On June 18, 2004, the defendant was arrested in the city of Danbury for operating a motor vehicle with a suspended driver's license. The passenger in his vehicle, Susan Curtis, also was taken into custody pursuant to an outstanding arrest warrant stemming from her failure to appear for a motor vehicle case in 1997. Subsequently, Curtis revealed to police that the defendant had given her a quantity of illegal narcotics to conceal when they were stopped by police. After a search of her person, the police recovered a package containing fourteen small bags that subsequently were determined to contain powdered and crack cocaine.

On the basis of these facts, the defendant was charged in the first part of a two part information with possession of narcotics with intent to sell by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b), possession of narcotics with intent to sell in violation of § 21a-277 (a), possession of narcotics with intent to sell within 1500 feet of a school in violation of General Statutes § 21a-278a (b), and possession of narcotics in violation of General Statutes § 21a-279 (a). Prior to trial, the defendant was advised that the state also had charged him in the second part of the information (part B), seeking an enhanced sentence for his alleged violation of the repeat offender provisions of § 21a-277 (a).[3]

the same or to another jury as the judicial authority may direct."

[3] This is the appropriate procedure pursuant to Practice Book § 36-14, which provides in relevant part: "Where the information alleges, in addition to the principal offense charged, a former conviction or convictions, such information shall be in two separate parts, each signed by the prosecuting

In a separate information, the state charged the defendant with violating the conditions of probation. See General Statutes § 53a-32.[4] During the course of the trial on the narcotics charges, the court held a violation of probation hearing outside the presence of the jury. At the hearing, the state offered into evidence a certified copy of an information and a conviction dated February 27, 2003, for the defendant's previous violation of § 21a-277 (a). The state asked the court to take judicial notice of the conviction, and defense counsel expressed no objection to the request. The certified copy of the conviction was accepted as a full exhibit. The state also presented testimony from Rolanda Mitchell, a supervising probation officer with the office of adult probation,

authority. In the first part, the particular offense with which the accused is charged shall be set out, and in the other part the former conviction or convictions shall be alleged. . . ."

[4] General Statutes § 53a-32 provides in relevant part: "(a) At any time during the period of probation or conditional discharge, the court or any judge thereof may issue a warrant for the arrest of a defendant for violation of any of the conditions of probation or conditional discharge, or may issue a notice to appear to answer to a charge of such violation, which notice shall be personally served upon the defendant. . . . Upon such arrest . . . the probation officer shall immediately so notify the court or any judge thereof. Thereupon, or upon an arrest by warrant as herein provided, the court shall cause the defendant to be brought before it without unnecessary delay for a hearing on the violation charges. At such hearing the defendant shall be informed of the manner in which such defendant is alleged to have violated the conditions of such defendant's probation or conditional discharge, shall be advised by the court that such defendant has the right to retain counsel and, if indigent, shall be entitled to the services of the public defender, and shall have the right to cross-examine witnesses and to present evidence in such defendant's own behalf.

"(b) If such violation is established, the court may: (1) Continue the sentence of probation or conditional discharge; (2) modify or enlarge the conditions of probation or conditional discharge; (3) extend the period of probation or conditional discharge . . . or (4) revoke the sentence of probation or conditional discharge. If such sentence is revoked, the court shall require the defendant to serve the sentence imposed or impose any lesser sentence. . . . No such revocation shall be ordered, except upon consideration of the whole record and unless such violation is established by the introduction of reliable and probative evidence and by a preponderance of the evidence."

who identified the defendant in court and testified that she had supervised him during a term of probation that he had served in connection with his 2003 conviction. The defendant offered no evidence to rebut the existence of the conviction, nor did defense counsel challenge Mitchell's identification of the defendant as the individual whom she had been supervising in connection with the 2003 conviction. At the close of the violation of probation hearing, the court decided to reserve decision on the violation of probation charge.

Following a jury trial on the narcotics charges, the jury found the defendant guilty of all but the first count. In addition, the court found the defendant guilty of violating the terms of his probation stemming from his prior conviction. After the jury was excused, the senior assistant state's attorney (state's attorney) raised the issue of part B of the information, stating: "I would note, Your Honor, that, in [this case], there is a part B of [the] information, and it's my understanding that defense counsel wishes to waive a jury on that and have a court trial." Defense counsel responded: "I'm waiving a jury. I'm not sure that it's appropriate to even have a part B in this case. . . . [T]he statute . . . does provide a specific penalty range for . . . a second offense, but I don't see . . . where it requires a part B. I think that's a sentencing discretion. It's up to the judge, and it will come up in the [presentencing investigation report]." The court responded that it was "already aware . . . that [the defendant] has a prior conviction." The state's attorney expressed concern that the prior conviction alleged in part B of the information, on which the state based its argument for a sentencing enhancement, "does require a finding by a fact finder." The state's attorney continued: "I guess the concern is I don't want this then to be an issue on appeal. But as long as defense counsel [is] fine with

it, and the defendant is fine with [defense counsel's] decision and interpretation of the law, that's fine with me." At that point, defense counsel reiterated her desire to have the matter handled at the sentencing hearing. Finally, at the close of the proceeding, the state once again sought to confirm defense counsel's position with respect to the disposition of part B: "I would also note that defense counsel is waiving a part B of the information, determining that it is not necessary for the sentence of up to thirty years."[5] The court asked defense counsel if that was "a fair statement," to which she responded affirmatively.

After the jury returned its verdict on the narcotics charges, the court found that the defendant had violated the conditions of his probation on the basis of the evidence presented at the trial and at the violation of probation hearing. The court deferred sentencing on the violation of probation charge, however, so that it could review the presentencing investigation report and sentence the defendant on all charges after a full hearing. Ultimately, the court imposed an effective sentence of thirty years imprisonment, suspended after thirteen years, and five years probation.

The defendant appealed from the judgment of conviction on several grounds, and the Appellate Court rejected all but one of the defendant's claims.[6] See *State* v. *Myers*, 101 Conn. App. 167, 168–69, 921 A.2d 640 (2007). Noting that this claim was unpreserved, the Appellate Court, invoking the plain error doctrine, none-

---

[5] Thirty years imprisonment represents the increased maximum penalty under § 21a-277 (a) for a repeat offender. See General Statutes § 21a-277 (a).

[6] Specifically, the defendant also raised evidentiary insufficiency, improper jury instruction and evidentiary claims. *State* v. *Myers*, 101 Conn. App. 167, 168–69, 921 A.2d 640 (2007). We note that Justice Berdon dissented from the majority opinion with respect to the defendant's claims regarding evidentiary insufficiency and improper jury instruction but concurred with respect to the court's plain error analysis. See id., 195 (*Berdon, J.*, concurring in part and dissenting in part).

theless vacated the defendant's sentence and remanded the case for a hearing on part B of the information and resentencing. Id., 186. The court concluded that the trial court's failure to "put the defendant to plea to accord him a hearing regarding his jeopardy as a repeat offender and to make a finding regarding his status as a repeat offender" in accordance with Practice Book § 42-2 constituted plain error, and that "it would be an injustice for [the] court not to afford the defendant relief on the ground that he failed to preserve his claim." Id. The Appellate Court's ruling appears to be based on its conclusion that "[a] court commits plain error when it fails to implement properly the mandatory provisions of clearly applicable rules of practice." Id., 185. We thereafter granted the state's petition for certification to appeal, limited to the following issue: "Did the Appellate Court properly conclude that the court committed plain error when it sentenced the defendant as a repeat offender?" *State* v. *Myers*, 283 Conn. 906, 927 A.2d 919 (2007).

On appeal to this court, the state claims that the Appellate Court improperly concluded that the trial court had committed plain error. The state's brief focuses on whether it was plain error to allow defense counsel to waive a trial on part B of the information, and whether it was plain error to forgo a part B trial when the defendant already had been adjudicated a repeat offender on the basis of evidence presented at the violation of probation hearing. The defendant responds by asserting that the trial court's failure to comply with Practice Book § 42-2 affected the fairness and integrity of the proceedings to such an extent that his due process rights were implicated and that reversal under the plain error doctrine is the proper remedy. The defendant also argues that defense counsel's waiver of a trial on part B of the information and stipulation to the defendant's prior conviction were equivalent to

an unconstitutional guilty plea under *Boykin* v. *Alabama*, 395 U.S. 238, 242–43, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969).[7] In our view, the failure of the trial court in this case to comply strictly with Practice Book § 42-2 "does not constitute one of the truly extraordinary situations [in which] the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." (Internal quotation marks omitted.) *State* v. *Fagan*, 280 Conn. 69, 87, 905 A.2d 1101 (2006), cert. denied, 549 U.S. 1269, 127 S. Ct. 1491, 167 L. Ed. 2d 236 (2007). Thus, we agree with the state that the trial court's actions did not warrant application of the plain error doctrine, and, therefore, we reverse in part the judgment of the Appellate Court.

We begin our discussion by setting forth the appropriate standard of review. We previously have indicated that we apply an abuse of discretion standard to the Appellate Court's decision to invoke the plain error doctrine. For instance, in *Finley* v. *Aetna Life & Casualty Co.*, 202 Conn. 190, 520 A.2d 208 (1987), overruled on other grounds by *Curry* v. *Burns*, 225 Conn. 782, 626 A.2d 719 (1993), we declared that "the scope of our review is limited to determining whether the Appellate Court abused its discretion in granting review under the plain error doctrine. The critical question, accordingly, is not whether this court would have granted review in the same circumstances . . . but whether, if we indulge every reasonable presumption in favor of the correctness of the Appellate Court's decision, that

---

[7] In the Appellate Court, the defendant challenged the repeat offender sentencing enhancement under both the plain error and *Golding* doctrines. *State* v. *Myers*, supra, 101 Conn. App. 184. Finding plain error, the Appellate Court declined to address whether this case warranted review under *Golding*. Id., 184 n.12. We granted certification to review the Appellate Court's plain error determination, and also decline to engage in a *Golding* analysis. We will discuss the constitutional aspects of the defendant's claim only insofar as necessary to address fully the certified issue.

court properly exercised its discretionary power under [what is now] Practice Book § [60-5]." *Finley* v. *Aetna Life & Casualty Co.*, supra, 196; see also *State* v. *Pierce*, 269 Conn. 442, 451, 849 A.2d 375 (2004) (standard of review of Appellate Court's invocation of plain error doctrine is abuse of discretion); *State* v. *Fitzgerald*, 257 Conn. 106, 111, 777 A.2d 580 (2001) (same). This approach was based on our reading of what is now Practice Book § 60-5, which provides in relevant part that "[t]he court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The court may in the interests of justice notice plain error not brought to the attention of the trial court. . . ." Although we continue to adhere to the abuse of discretion standard articulated in *Finley*, we take this opportunity to clarify its reasoning and expound on the plain error doctrine generally.

An appellate court addressing a claim of plain error first must determine if the error is indeed "plain" in the sense that it is "patent [or] readily discernable on the face of a factually adequate record, [and] also . . . obvious in the sense of not debatable." C. Tait & E. Prescott, Connecticut Appellate Practice and Procedure (3d Ed. 2000) § 8.7, p. 303; see also *Cahill* v. *Board of Education*, 187 Conn. 94, 100–101, 444 A.2d 907 (1982) (factual record inadequate to determine if plain error was committed when appellant failed to raise claim in complaint or request to charge). This determination clearly requires a review of the plain error claim presented in light of the record.

Although a complete record and an obvious error are prerequisites for plain error review, they are not, of themselves, sufficient for its application. "Plain error review is reserved for truly extraordinary situations [in which] the existence of the error is so obvious that it affects the fairness and integrity of and public confi-

dence in the judicial proceedings."[8] (Internal quotation marks omitted.) *Westport Taxi Service, Inc.* v. *Westport Transit District*, 235 Conn. 1, 25, 664 A.2d 719 (1995), quoting *Scott* v. *Barrett*, 212 Conn. 217, 222, 561 A.2d 941 (1989). Thus, in addition to examining the patent nature of the error, the reviewing court must examine that error for the grievousness of its consequences in order to determine whether reversal under the plain error doctrine is appropriate. "A party cannot prevail under plain error unless it has demonstrated that the failure to grant relief will result in manifest injustice." (Internal quotation marks omitted.) *State* v. *Kirk R.*, 271 Conn. 499, 507–508 n.14, 857 A.2d 908 (2004). In *State* v. *Fagan*, supra, 280 Conn. 69, we described the two-pronged nature of the plain error doctrine: "[An appellant] cannot prevail under [the plain error doctrine] . . . unless he demonstrates that the claimed error is *both* so clear *and* so harmful that a failure to reverse the judgment would result in manifest injustice." (Emphasis added; internal quotation marks omitted.) Id., 87, quoting *State* v. *Colon*, 272 Conn. 106, 235 n.85, 864 A.2d 666 (2004), cert. denied, 546 U.S. 848, 126 S. Ct. 102, 163 L. Ed. 2d 116 (2005). It is clear that an appellate court addressing an appellant's plain error claim *must* engage in a review of the trial court's actions and, upon finding a patent error, determine whether the grievousness of that error qualifies for the invocation of the plain error doctrine and the automatic reversal that

---

[8] We have previously stated that "[p]lain error review is . . . appropriate in matters of statutory construction because the interpretation of [a] statute and the resolution of [the] issue does not require further fact-finding . . . ." (Internal quotation marks omitted.) *State* v. *Velasco*, 253 Conn. 210, 218–19 n.9, 751 A.2d 800 (2000). We now clarify, however, that even a pure question of law coupled with a complete record is not a *guarantee* of plain error review. Under these circumstances, a court reviewing a claim under the plain error doctrine must still proceed to examine the *nature* of the error to determine if justice requires reversal. See Practice Book § 60-5 (reviewing court has discretion to notice plain error "in the interests of justice").

accompanies it. We review these determinations on appeal for an abuse of discretion.

We next turn to a closer examination of the plain error doctrine itself. This doctrine, codified at Practice Book § 60-5, is an extraordinary remedy used by appellate courts to rectify errors committed at trial that, although unpreserved, are of such monumental proportion that they threaten to erode our system of justice and work a serious and manifest injustice on the aggrieved party. "[T]he plain error doctrine . . . is not . . . a rule of reviewability. It is a rule of reversibility. That is, it is a doctrine that this court invokes in order to rectify a trial court ruling that, although either not properly preserved or never raised at all in the trial court, nonetheless requires reversal of the trial court's judgment, for reasons of policy. . . . In addition, the plain error doctrine is reserved for truly extraordinary situations [in which] the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . Plain error is a doctrine that should be invoked sparingly. . . . Implicit in this very demanding standard is the notion . . . that invocation of the plain error doctrine is reserved for occasions requiring the reversal of the judgment under review." (Internal quotation marks omitted.) *State* v. *Fagan*, supra, 280 Conn. 86–87, quoting *State* v. *Kirk R.*, supra, 271 Conn. 507–508 n.14. "[Thus, an appellant] cannot prevail under [the plain error doctrine] . . . unless he demonstrates that the claimed error is both so clear and so harmful that a failure to reverse the judgment would result in manifest injustice." (Internal quotation marks omitted.) *State* v. *Fagan*, supra, 87. Although we agree with the Appellate Court that the trial court's failure to comply with the procedures of Practice Book § 42-2 was clearly improper, we conclude that the Appellate Court abused its discretion in vacating the defendant's sentence because

the error in this case did not "result in manifest injustice." (Internal quotation marks omitted.) Id.

The record does not reflect that the violation of Practice Book § 42-2 in this case was plain error. Indeed, apart from the trial court's failure to comply strictly with the applicable rule of practice, which we do not condone, the defendant has failed to raise *any* doubt with respect to the validity of his prior conviction.[9] A trial court's failure to comply with a rule of criminal procedure, without more, is insufficient to require reversal for plain error.[10] See, e.g., *State* v. *Suggs*, 194 Conn. 223, 226–27, 478 A.2d 1008 (1984) ("[n]ot every deviation from the specific requirements of a Practice

---

[9] Indeed, in discussing the evidence submitted at the violation of probation hearing, even the Appellate Court conceded the fact of the defendant's prior conviction. See *State* v. *Myers*, supra, 101 Conn. App. 182 n.11 ("[t]he defendant had been sentenced on February 27, 2003, to five years [imprisonment], suspended, with three years probation, and was on probation at the time of his arrest in June, 2004").

[10] To the extent some of the Appellate Court's cases suggest a per se rule rendering all violations of the rules of practice plain error, the Appellate Court is mistaken. For example, in *Jacqueline Properties, LLC* v. *Gartrell*, 101 Conn. App. 6, 919 A.2d 1059, cert. denied, 283 Conn. 907, 927 A.2d 918 (2007), the court declared: "A court's failure to follow the mandatory provisions of a statute prescribing trial procedures constitutes plain error subject to plenary review." Id., 9–10. In addition to being a misstatement of the law, this statement is essentially a non sequitur. It is well established that the plain error doctrine is "not . . . a rule of reviewability. It is a rule of reversibility. . . . [I]t is a doctrine that this court invokes in order to rectify a trial court ruling that, *although either not properly preserved or never raised at all in the trial court*, nonetheless requires reversal of the trial court's judgment, for reasons of policy." (Emphasis added.) *State* v. *Cobb*, 251 Conn. 285, 343 n.34, 743 A.2d 1 (1999), cert. denied, 531 U.S. 841, 121 S. Ct. 106, 148 L. Ed. 2d 64 (2000). Plenary review, on the other hand, is a species of review that is generally reserved for questions of law that are properly raised or preserved for appeal. The two concepts are essentially mutually exclusive. See *Santopietro* v. *New Haven*, 239 Conn. 207, 218 n.11, 682 A.2d 106 (1996) ("our plain error appellate rule by its terms does not apply to the typical claim that . . . would be denied plenary appellate review"). Furthermore, the plain error doctrine does not lend itself to a per se rule such as the one expressed in *Jacqueline Properties, LLC*, and we reject such an approach.

Book rule necessitates reversal"); cf. *State* v. *Fernandez*, 254 Conn. 637, 647, 758 A.2d 842 (2000) (violation of rules of practice not ground for reversal when defendant was not deprived of his constitutional rights), cert. denied, 532 U.S. 913, 121 S. Ct. 1247, 149 L. Ed. 2d 153 (2001).[11] In the present case, the defendant's brief is bereft of a single reason why the absence of a trial or plea canvass on part B of the information is such an obvious error that "it affects the fairness and integrity of and public confidence in the judicial proceedings." (Internal quotation marks omitted.) *State* v. *LaBrec*, 270 Conn. 548, 559, 854 A.2d 1 (2004).

Application of the plain error doctrine in the present case is, in our view, therefore, largely controlled by our reasoning in *State* v. *Fagan*, supra, 280 Conn. 69. In that case, the defendant, Damon Fagan, had his sentence enhanced pursuant to part B of a two part information charging him with a violation of General Statutes § 53a-40b, which provides an enhanced sentence for an offense committed while an offender is released on bond. Id., 74. After the jury returned a guilty verdict on the underlying charges, the court "instructed the clerk to put [Fagan] to plea on part B of the information . . . ." Id., 85. Fagan entered a plea of guilty, which the trial court accepted without conducting a canvass. Id.

---

[11] The Appellate Court's reference to a passage from *State* v. *Irala*, 68 Conn. App. 499, 515, 792 A.2d 109, cert. denied, 260 Conn. 923, 797 A.2d 519, cert. denied, 537 U.S. 887, 123 S. Ct. 132, 154 L. Ed. 2d 148 (2002), in which that court declared, "[w]e have held generally that a mandatory provision of the rules of practice . . . must be implemented fully to avoid trampling on a defendant's constitutional rights, which would constitute plain error and require, as a consequence, reversal of the judgment," is misplaced. See *State* v. *Myers*, supra, 101 Conn. App. 185. The rule expressed in *Irala* specifically was applicable to violations of the rules of practice that result in the deprivation of a criminal defendant's constitutional rights. Because, in the present case, the Appellate Court did not review the defendant's claims under *Golding*, and we have determined that the defendant has not been deprived of any constitutional rights, the quoted language from *Irala* is inapposite.

The court subsequently enhanced Fagan's sentence on the basis of his guilty plea; id.; and Fagan thereafter appealed from the trial court's judgment on constitutional grounds. See id., 74, 84. Fagan argued that his plea of guilty in connection with part B of the information was constitutionally deficient because the trial court had failed to conduct an adequate plea canvass, thereby rendering his plea not knowing and voluntary. Id., 84. Because Fagan's claim was of constitutional magnitude, and not preserved at trial, he sought review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[12]

Although Practice Book § 42-2 was not implicated in *Fagan* because the sentencing enhancement was not the result of a prior conviction, we find that case analogous to the present appeal and are persuaded that its sound reasoning is well suited to our analysis. In *Fagan*, we began by noting the purposes served by the requirement of Practice Book § 36-14 that a two part information be used whenever the state seeks an enhanced penalty on the basis of prior criminal conduct. "The purpose of this rule is to ensure that the defendant is given adequate notice of the charge against him so that he properly may prepare his defense." *State* v. *Fagan*, supra, 280 Conn. 92. In addition to providing the defendant with notice of the state's intention to seek an enhanced penalty, the use of part B of a two part information avoids the possibility of prejudicing the jury with knowledge of the defendant's prior criminal con-

---

[12] "Under *Golding*, a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Fagan*, supra, 280 Conn. 89–90.

duct. See *State* v. *Ferrone*, 96 Conn. 160, 173, 113 A. 452 (1921) (Prior convictions must be presented in a separate part of the information because "[i]t cannot be believed that an accused man would ever have a fair trial, resulting in a verdict not affected by prejudice or by considerations by which the jury should not be influenced, if, during that trial . . . evidence of his former convictions has been placed before [it]. It is beyond question that knowledge of such facts must necessarily prejudice the minds of his triers against the accused . . . ."). These purposes informed our analysis in *Fagan* and are similarly relevant to the resolution of the present appeal.

Our conclusion in *Fagan* that the omission of a plea canvass with respect to part B of an information was not a violation of due process was supported by the United States Supreme Court's opinion in *Apprendi* v. *New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). See *State* v. *Fagan*, supra, 280 Conn. 93. In *Apprendi*, the petitioner challenged an enhancement to his sentence on the basis of the trial court's determination, by a preponderance of the evidence, that his crime had been motivated by racial bias. See *Apprendi* v. *New Jersey*, supra, 470–71. The petitioner argued that the due process clause of the United States constitution requires such a finding to be proved to a jury beyond a reasonable doubt. Id., 471. The court largely agreed, declaring that "[o]*ther than the fact of a prior conviction*, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury . . . and proved beyond a reasonable doubt." (Emphasis added.) Id., 490. Relying on the United States Supreme Court's reasoning in *Apprendi*, we concluded in *Fagan* that, "once [Fagan was] convicted of having committed the crimes in part A of the information, [his] status at the time he committed those crimes involved a legal determination, not a factual one,

and that, accordingly, he was not entitled to a jury trial on the issue of his status."[13] *State* v. *Fagan,* supra, 94; see also *State* v. *Sanko,* 62 Conn. App. 34, 44, 771 A.2d 149 ("[A] defendant's status under [§ 53a-40b] arises out of some antecedent encounter with the criminal justice system. The record of that antecedent encounter is a judicial record of which a court may take judicial notice."), cert. denied, 256 Conn. 905, 772 A.2d 599 (2001). Furthermore, in *Fagan* we endorsed the view that "other facts . . . which may be used as a basis for a sentence enhancement, also fall within that exception [articulated in *Apprendi*] because they arise from and essentially are legal determinations analogous to a prior conviction." *State* v. *Fagan,* supra, 96.

We continue to adhere to the view that, regardless of the dictates of Practice Book § 42-2, due process does not require a separate trial or judicial proceeding when the fact of a prior conviction is essentially uncontested. With that precept in mind, we turn to the facts of the present case. Although we agree with the Appellate Court that the trial court improperly failed to comply with the strictures of § 42-2, we do not agree that this impropriety was so egregious as to constitute plain error and mandate reversal. Due process does not require a trial to prove the fact of a prior conviction beyond a reasonable doubt. See *Apprendi* v. *New Jersey,* supra, 530 U.S. 490; *State* v. *Fagan,* supra, 280 Conn. 93–94. We cannot agree, therefore, that the trial

---

[13] We recognize the inconsistency between our holding in *Fagan* and the mandate in Practice Book § 42-2. Logical and legal consistency would seem to dictate a modification of § 42-2 that would afford a trial court discretion to conduct a trial or plea canvass in situations in which the prior conviction is disputed but dispense with such procedural formalities when there is conclusive, uncontested evidence of the fact of the prior conviction. Because our review in this case is limited to whether the trial court's failure to comply with § 42-2 in sentencing the defendant as a repeat offender under § 21a-277 (a) constituted plain error, and we conclude that it did not, we need not pursue this inconsistency further.

court's failure to implement the mandatory provisions of § 42-2 "trampl[ed] on [the] defendant's constitutional rights" thus "constitut[ing] plain error and requir[ing] . . . reversal of the judgment." (Internal quotation marks omitted.) *State* v. *Myers*, supra, 101 Conn. App. 185, quoting *State* v. *Irala*, 68 Conn. App. 499, 515, 792 A.2d 109, cert. denied, 260 Conn. 923, 797 A.2d 519, cert. denied, 537 U.S. 887, 123 S. Ct. 132, 154 L. Ed. 2d 148 (2002). There simply was no constitutional right on which the trial court could have trampled in this case.[14]

Although this conclusion obviates the need for us to discuss most of the defendant's sundry constitutional arguments, we do believe that it is appropriate to address his disputed claim that any stipulation at trial by defense counsel regarding his prior conviction was constitutionally void. Relying on the Supreme Court's decision in *Boykin* v. *Alabama*, supra, 395 U.S. 238, the defendant argues that, in the absence of a trial, anything short of a knowing and voluntary plea by the defendant personally with respect to part B of the information was invalid. The state disputes this claim, arguing that part B of the information does not charge the defendant with a substantive criminal offense, which would require a full, *Boykin*-type plea canvass. Moreover, relying on *Fagan* and *Apprendi*, the state asserts that defense counsel's waiver of a trial with respect to part B of the information was not defective because there is no constitutional right to a trial on the fact of a defendant's prior conviction. We agree with the state.

The defendant's reliance on *Boykin* is misplaced. *Boykin* concerned a criminal defendant (petitioner) who was charged with common-law robbery, an offense

[14] We do not address the defendant's argument that the exception for prior convictions set forth in *Apprendi* v. *New Jersey*, supra, 530 U.S. 490, and *Almendarez-Torres* v. *United States*, 523 U.S. 224, 239, 118 S. Ct. 1219, 140 L. Ed. 2d 350 (1998), is ripe for reversal. We recognize the United States Supreme Court's prerogative to reconsider its precedent, and we decline to presume the future of this exception without more definitive guidance from that court.

that, at that time, was punishable by death in the state of Alabama. Id., 239. At his arraignment, the petitioner pleaded guilty without being canvassed in any way by the trial judge or addressing the court. Id. Pursuant to Alabama law, a jury was impaneled to consider evidence regarding the nature of the offenses and the character and background of the petitioner and to determine the petitioner's sentence. See id., 240. During the sentencing hearing, the petitioner's counsel engaged in only "cursory cross-examination" of the state's witnesses, and the "petitioner neither testified himself nor presented testimony concerning his character and background." Id. The jury sentenced the petitioner to death; id.; and the Alabama Supreme Court upheld the petitioner's conviction and death sentence. See id., 240–41.

Under these extreme circumstances, the United States Supreme Court reversed, concluding that it was plain error "for the trial judge to accept [the] petitioner's guilty plea without an affirmative showing that it was intelligent and voluntary." Id., 242. The court equated the petitioner's guilty plea with a waiver of several of his constitutional rights, including "the privilege against compulsory self-incrimination . . . the right to trial by jury . . . [and] the right to confront one's accusers"; (citations omitted) id., 243; and declared that it could not "presume a waiver of these three important federal rights from a silent record." Id. The court held that "[w]hat is at stake for an accused facing death or imprisonment demands the utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence." Id., 243–44.

The present case is readily distinguishable from *Boykin* in a number of respects. First, as we previously noted, the defendant in this case had no constitutional right to a trial on the issue of his prior conviction. See, e.g., *State* v. *Fagan*, supra, 280 Conn. 93–94. Any waiver of a trial on that issue, therefore, was not of constitu-

tional dimension. Second, there is no indication in the record, nor has the defendant made any claim, that the constitutional right against compulsory self-incrimination was implicated at any point in the trial court proceedings. Finally, the defendant was afforded the opportunity to confront his accusers with respect to the alleged fact of his prior conviction. The defendant asserts that the violation of probation hearing was an insufficient substitute for the procedures mandated by Practice Book § 42-2. Although we agree that the violation of probation hearing did not strictly satisfy the requirements of § 42-2, we believe that it provided sufficient procedural safeguards to avoid casting any shadow on the fairness or integrity of the judicial proceeding or the just character of its outcome.

The defendant received the benefit of a hearing, outside the presence of the jury, to determine whether, if convicted of the present charges, he also would be guilty of a violation of probation stemming from his alleged prior conviction. At the violation of probation hearing, the defendant had an opportunity to challenge both the certified record of his conviction and the probation officer's identification of him as the individual serving probation for that conviction. Defense counsel presented no such challenge and expressed no objection when the state's attorney asked the court to take judicial notice of the certified copy of the defendant's conviction, which the court accepted and allowed as a full exhibit.[15] Indeed, in cross-examining the probation

[15] A court may take judicial notice of a defendant's unchallenged prior conviction; see *State* v. *Sanko*, supra, 62 Conn. App. 44; which apparently is what happened in this case. The following colloquy occurred at the violation of probation hearing:

"[State's Attorney]: . . . I'd ask the court to take judicial notice of the certified copy of conviction for a Kenneth Myers.

"The Court: And there's no objection from the defense, correct?

"[Defense Counsel]: That's correct.

\* \* \*

"[State's Attorney]: It's a full exhibit?

"The Court: It's a full exhibit."

officer, defense counsel implicitly conceded the fact of the defendant's prior conviction.

We need not address, in any great detail, the defendant's additional claim regarding the impropriety of defense counsel's several stipulations regarding the defendant's prior conviction. It is sufficient to note that the defendant has failed to demonstrate how any alleged impropriety was so harmful or egregious as to qualify for the opprobrium of the plain error doctrine. We are unpersuaded by the two extra-jurisdictional cases that the defendant offers to bolster his assertion that defense counsel's stipulation to his prior conviction is an insufficient basis for the trial court to make a finding of recidivism. In both *Cox* v. *Hutto*, 589 F.2d 394 (8th Cir. 1979), and *State* v. *Cheatham*, 139 Idaho 413, 80 P.3d 349 (App. 2003), each court reversed a defendant's sentence that had been enhanced on the basis of prior convictions, the validity of which defense counsel stipulated to. These cases are distinguishable from the present appeal in one critical respect. In each case, the *only* evidence of the defendant's prior convictions was the bare stipulations of the defendant's trial counsel. *Cox* v. *Hutto*, supra, 396 ("The constitutionally defective stipulation by [defense] counsel was the only evidence of [the defendant's prior] convictions at the state court trial. The error in receiving that stipulation was presumptively prejudicial unless the [s]tate can show that, absent the stipulation, it possessed at the time of trial evidence establishing at least the three prior convictions necessary to support [the defendant's enhanced] sentence."); *State* v. *Cheatham*, supra, 418 ("This [c]ourt has found no case holding that a stipulation by defense counsel is alone sufficient to entirely waive a defendant's right to a trial on his status as a persistent violator . . . . [T]he waiver of [the defendant's] right to a trial on the persistent violator allegations was

accepted solely upon defense counsel's stipulation
. . . .").

In the present case, the state did establish, with conclusive evidence at an adversarial hearing, that the defendant had a prior conviction for violating § 21a-277 (a). Moreover, despite several opportunities subsequent to the violation of probation hearing, the defendant never disputed the fact of his prior conviction. For instance, even though the state's attorney expressed his belief that the defendant's prior conviction was required to be proven to a fact finder, defense counsel averred on two occasions that she was waiving a trial on part B of the information and that its significance should be left to the discretion of the trial court to determine at sentencing. Finally, at sentencing, defense counsel once again discussed the defendant's prior conviction as if it was an uncontested fact. Thus, any "stipulation" by defense counsel more closely resembles a tacit recognition of the irrefutability of the state's evidence rather than a naked admission of guilt such as that found in *Cox* and *Cheatham*.

We are firmly convinced that, in light of the certainty of the evidence regarding the defendant's prior conviction, the defendant's failure to challenge such evidence at the violation of probation hearing or on any other occasion, defense counsel's numerous stipulations and concessions with respect to the prior conviction, and the defendant's failure to indicate to this court what purpose would now be served by a trial or plea canvass, the Appellate Court's invocation of the plain error doctrine, although understandable in light of the language of Practice Book § 42-2, was an abuse of discretion. The defendant simply has failed to meet his burden of "demonstrat[ing] that the failure to grant relief will result in manifest injustice." *State* v. *Toccaline*, 258 Conn. 542, 553, 783 A.2d 450 (2001). The trial court's

failure to comply with § 42-2, though improper, was harmless.

The judgment of the Appellate Court is reversed in part and the case is remanded to that court with direction to affirm the judgment of the trial court.

In this opinion the other justices concurred.