******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

IN RE YASIEL R. ET AL.*
(AC 36298)

Gruendel, Beach and Norcott, Js.

*Argued April 7—officially released July 11, 2014***

(Appeal from Superior Court, judicial district of Willimantic, Juvenile Matters, Hon. Francis J. Foley III, judge trial referee.)

*James P. Sexton*, assigned counsel, for the appellant (respondent mother).

*Stephen G. Vitelli*, assistant attorney general, with whom, on the brief, were *George Jepsen*, attorney general, and *Benjamin Zivyon*, assistant attorney general, for the appellee (petitioner).

*Karen O. Damboise*, for the minor children.

*Opinion*

GRUENDEL, J. The respondent mother appeals from the judgments of the trial court terminating her parental rights as to her minor children, Yasiel R. and Sky R.[1] On appeal, the respondent claims that the court was required to canvass her personally about her decisions not to contest the exhibits presented to the court by the petitioner, the Commissioner of Children and Families, and to waive her right to a full trial, pursuant to (1) Practice Book § 35a-1[2] and (2) constitutional due process requirements. We affirm the judgments of the trial court.

The record discloses the following relevant factual and procedural history. The respondent's "fourth child, Yasiel, was born to [the respondent] when she was twenty-two years old. The father . . . was fifteen years old when he impregnated [the respondent]. [The respondent] was subsequently arrested for statutory rape. [The father] moved in with [the respondent] while she was pregnant. After the child was born, [the respondent] reported that [the father] became increasingly violent. She said she did not want to remain in the relationship and wished to leave, but she became pregnant with Sky, her fifth child, in July, 2009, only four months after Yasiel was born." The two children were removed from the respondent's care on September 21, 2011. The respondent was thereafter provided with supervised visitation and transportation.

Due to the respondent's various arrests and her mental health and substance abuse issues, the petitioner filed petitions to terminate her parental rights in November, 2012. According to the petitioner, the court, on December 11, 2012, advised the respondent of her trial rights, entered denials to the petitions on her behalf, and appointed her an attorney.[3] A contested hearing then was scheduled for November 12, 2013. At that hearing, the respondent's counsel stated that "although [the respondent is] not in agreement with the [termination of parental rights], she cannot bring herself to consent today. That being said, she's in agreement with the court taking the case on the papers. She's in agreement to the exhibits that . . . have been entered." Her counsel then stated that the respondent "wants the court to be aware that things have significantly changed for her over the last two years" and continued to explain those changes.[4] At no time did the court canvass the respondent personally to question her decisions not to contest the petitioner's exhibits and to waive her right to a full trial. It stated only that "I think I understand your position, and I will certainly consider that [you've made great progress] when I'm reviewing all the material . . . ."

In its November 13, 2013 memorandum of decision, the court terminated the parental rights of the respon-

dent. In so doing, the court held that the petitioner had proved, by clear and convincing evidence, that (1) the children were neglected or uncared for in a prior proceeding, (2) the respondent was provided specific steps to take to facilitate the return of the children, and (3) the respondent had failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the children, such parent could assume a responsible position in the lives of the children. The court also held that, in considering all the statutory criteria set forth in General Statutes § 17a-112 (k), termination was in the best interests of the children. This appeal followed.

The respondent concedes that she failed to preserve for review the issue of whether the court erred in failing to personally canvass her at the trial stage of the termination proceedings. "Such objection would have alerted the court to the claim of error, afforded the court an opportunity to address the claim on the record and, if necessary, to take corrective action in advance of an appeal." *State* v. *Elson*, 125 Conn. App. 328, 348–49, 9 A.3d 731 (2010), rev'd in part on other grounds, 311 Conn. 726,      A.3d      (2014). Furthermore, "[i]t is the appellant's responsibility to present such a claim clearly to the trial court . . . . For us [t]o review [a] claim, which has been articulated for the first time on appeal and not before the trial court, would result in a trial by ambuscade of the trial judge." (Internal quotation marks omitted.) *Feen* v. *New England Benefit Cos., Inc.*, 81 Conn. App. 772, 776, 841 A.2d 1193, cert. denied, 269 Conn. 910, 852 A.2d 739 (2004). For this reason, we ordinarily limit our review on appeal to issues that were distinctly raised at trial and ruled on by the court. We may, however, consider unpreserved claims under the rubric of plain error or, if it concerns an alleged constitutional error, under *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989). The respondent argues that we are able to review the merits of her claims through these alternative avenues.

I

The respondent argues that the court, in violation of Practice Book § 35a-1, failed to canvass her personally about her decisions not to contest the petitioner's exhibits and to waive her right to a full trial. We disagree.

The respondent first contends that although she did not object to the court's failure to comply with Practice Book § 35a-1, the issue is reviewable on appeal because the judge is presumed to know the statutes and the rules of practice that govern the cases he adjudicates. This argument is contrary to the plain language of Practice Book § 60-5, which provides in relevant part: "The court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. . . ."

The respondent alternatively argues that the judgments of the court should be reversed because its oversight constituted plain error. Practice Book § 60-5, in addition to the aforementioned provision, also provides in relevant part that "[t]he [reviewing] court may in the interests of justice notice plain error not brought to the attention of the trial court." The plain error doctrine, however, is "not . . . a rule of reviewability. It is a rule of reversibility. . . . It is a doctrine that should be invoked sparingly and only on occasions requiring the reversal of the judgment under review. . . . Plain error review is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . .

"We engage in a two step analysis in reviewing claims of plain error. First, we must determine whether the trial court in fact committed an error and, if it did, whether that error was indeed plain in the sense that it is patent [or] readily discernable on the face of a factually adequate record, [and] also . . . obvious in the sense of not debatable. . . . [T]his inquiry entails a relatively high standard, under which it is not enough for the defendant simply to demonstrate that his position is correct. Rather, the party seeking plain error review must demonstrate that the claimed impropriety was so clear, obvious and indisputable as to warrant the extraordinary remedy of reversal. . . . Because [a] party cannot prevail under plain error unless it has demonstrated that the failure to grant relief will result in manifest injustice . . . under the second prong of the analysis we must determine whether the consequences of the error are so grievous as to be fundamentally unfair or manifestly unjust." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *Clougherty* v. *Clougherty*, 131 Conn. App. 270, 273–74, 26 A.3d 704, cert. denied, 302 Conn. 948, 31 A.3d 383 (2011).

The respondent argues that plain error review is warranted because the court failed to abide by the rules of practice, namely, Practice Book § 35a-1. She supports her argument by citing *State* v. *Pina*, 185 Conn. 473, 482, 440 A.2d 962 (1981), which held that "a trial court's failure to follow the mandatory provisions of a statute prescribing trial procedures is plain error . . . [and that the] failure to follow a procedural rule is similarly erroneous." (Citation omitted.) She then concludes that the court's "oversight not only violated our rules of practice, but jeopardized [her] core due process rights and deprived her of a fundamentally fair hearing." She further contends that "this error is both obvious on its face and impugns procedures designed to ensure a fair hearing, thereby undermining public confidence in Connecticut's judicial proceedings . . . ." The petitioner, in contrast, claims that the "court did not infringe on

[the respondent's] opportunity to receive a fair trial" and therefore did not commit plain error. We agree with the petitioner that plain error review is not warranted in the present appeal.

The respondent's argument ignores pertinent precedent delineated by our Supreme Court in *State* v. *Myers*, 290 Conn. 278, 963 A.2d 11 (2009). In *Myers*, the defendant was charged in the first part of a two part information with, inter alia, possession of narcotics with intent to sell. The state also charged him in the second part of the information, part B, seeking an enhanced sentence for his alleged violation of the repeat offender provisions of General Statutes § 21a-277 (a). Id., 281–82. The jury found the defendant guilty of the narcotics charges, and the defendant's counsel waived a jury trial on part B of the information. The defendant did not raise the issue before the trial court, but later claimed that the court improperly convicted and sentenced him without a guilty plea or a trial as to the part B information, in violation of Practice Book § 42-2.[5] Id., 284.

On appeal to this court, we held that although the claim was unpreserved, the trial court's failure to "put the defendant to plea to accord him a hearing regarding his jeopardy as a repeat offender and to make a finding regarding his status as a repeat offender in accordance with Practice Book § 42-2 constituted plain error, and that it would be an injustice for [the] court not to afford the defendant relief on the ground that he failed to preserve his claim." (Internal quotation marks omitted.) Id., quoting *State* v. *Myers*, 101 Conn. App. 167, 186, 921 A.2d 640 (2007) rev'd in part, 290 Conn. 278, 963 A.2d 11 (2009). The judgment of this court was then reversed in part by our Supreme Court, which stated: "Although we agree with the Appellate Court that the trial court's failure to comply with the procedures of Practice Book § 42-2 was clearly improper, we conclude that the Appellate Court abused its discretion in vacating the defendant's sentence because the error in this case did not result in manifest injustice. . . . [T]he defendant's brief is bereft of a single reason why the absence of a trial or plea canvass on part B of the information is such an obvious error that it affects the fairness and integrity of and public confidence in the judicial proceedings." (Citations omitted; internal quotation marks omitted.) *State* v. *Myers*, supra, 290 Conn. 289–90.

We are guided by this precedent in analyzing the present appeal. In reviewing the respondent's claim of plain error, we must first "determine whether the trial court in fact committed an error and, if it did, whether that error was indeed plain in the sense that it is patent [or] readily discernable on the face of a factually adequate record, [and] also . . . obvious in the sense of not debatable." (Emphasis omitted; internal quotation marks omitted.) *Clougherty* v. *Clougherty*, supra, 131

Conn. App. 273. Having thoroughly reviewed the record and the parties' briefs, we cannot conclude that, under the facts and circumstances of this case, the court committed plain error. It is neither clear nor obvious that Practice Book § 35a-1 has been violated in whole or in part. In fact, the provision, though applied, has never been interpreted. We therefore cannot unequivocally conclude that the court was required to canvass the respondent personally at the trial stage of the termination proceedings.

Even if we assume that it was error for the court not to canvass the respondent personally, the respondent has the burden to demonstrate that "the failure to grant relief will result in manifest injustice . . . ." (Internal quotation marks omitted.) Id., 273–74. The respondent has failed in this regard. A blanket statement made on appeal that the alleged error is obvious and undermines public confidence is not sufficient. She did not provide an adequate analysis on how such alleged error rises to the level that would require us to reverse the judgments of the trial court.[6] The respondent, therefore, cannot prevail under the plain error doctrine because she has failed to demonstrate how the alleged error resulted in consequences "so grievous as to be fundamentally unfair or manifestly unjust." (Internal quotation marks omitted.) Id., 274; see also *Blumberg Associates Worldwide, Inc.* v. *Brown & Brown of Connecticut, Inc.*, 311 Conn. 123, 154, 84 A.3d 840 (2014) ("[a] party cannot prevail under plain error unless it has demonstrated that the failure to grant relief will result in manifest injustice" [internal quotation marks omitted]). Accordingly, we refuse to reverse.

## II

The respondent also argues that the court violated her due process rights by failing to canvass her regarding her decisions not to contest the petitioner's exhibits against her and to waive her right to a full trial so as to ensure that her decisions were made knowingly, voluntarily, and intelligently. We disagree.

Because the respondent concedes that she did not preserve the issue for appeal, the court did not have an opportunity to rule on this matter. She therefore seeks review pursuant to *Golding* of this alleged constitutional error. "Our Supreme Court has held that a party can prevail on a claim of constitutional error not preserved at trial only if all of the following four conditions are satisfied: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. . . . *Golding* applies to civil as well as criminal cases." (Cita-

tion omitted; internal quotation marks omitted.) *In re Shane P.*, 58 Conn. App. 244, 253–54, 754 A.2d 169 (2000).

The respondent argues that the right to a contested trial is a personal right that cannot be waived by counsel. She argues that "the court destroyed forever [her] fundamental right to parent her children, and it did so by using a constitutionally defective procedure that deprived her of an opportunity to contest the petitioner's allegations at a contested trial in which her attorney could assist her in confronting any adverse witnesses and in presenting her own arguments and evidence orally." She claims that due process "requires the trial court to canvass personally a parent in any termination proceeding where he or she is deciding not to contest the petitioner's allegations and/or waiving trial to ensure those decisions are being made knowingly, voluntarily, and intelligently." We cannot agree because this right is not clearly established as the law of our state.

In this case, the first two prongs of *Golding* are satisfied.[7] First, the record is adequate to review the respondent's claim. Second, "a claim concerning the termination of a respondent's parental rights is of constitutional magnitude in that [t]he right to the integrity of the family is among the most fundamental rights guaranteed by the fourteenth amendment." (Internal quotation marks omitted.) *In re Shyliesh H.*, 56 Conn. App. 167, 178, 743 A.2d 165 (1999). The respondent has failed, however, to meet the third requirement of *Golding* by showing that a constitutional violation clearly exists and clearly deprived her of a fair trial. Although she cites cases from other jurisdictions,[8] she cannot cite to any precedent from Connecticut for the proposition that a parent has a constitutional right to be personally canvassed at the trial stage of a termination proceeding. And, after thorough research, we do not find any binding precedent to support that proposition.

Given the lack of precedent, the respondent contends that her due process claim is properly considered under the guideposts set forth in *Mathews* v. *Eldridge*, 424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976). According to *Mathews*, due process requires consideration of three factors: "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Id., 335. The respondent analyzes each factor and its applicability to her termination case. The insurmountable problem for the respondent in the present appeal, however, is the burden of proof and the high standard under

which an unpreserved claim pursuant to *Golding* is reviewed. The burden is on the respondent to show that "the alleged constitutional violation *clearly* exists and *clearly* deprived [her] of a fair trial . . . ." (Emphasis added; internal quotation marks omitted.) *In re Shane P.*, supra, 58 Conn. App. 253. Under our current legal landscape, we are not convinced that the court was required to canvass the respondent personally about her decision not to contest the petitioner's exhibits at the trial stage of her termination hearing. The respondent's claim of a clear constitutional error, therefore, must fail.

The judgments are affirmed.

In this opinion BEACH, J., concurred.

\* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

\*\* July 11, 2014, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] The court also terminated the parental rights of the respondent father. He did not appeal from those judgments. We therefore refer solely to the respondent mother as the respondent.

[2] Practice Book § 35a-1 provides: "(a) Notwithstanding any prior statements acknowledging responsibility, the judicial authority shall inquire whether the allegations of the petition are presently admitted or denied. This inquiry shall be made of the parent(s) or guardian in neglect, abuse or uncared for matters; and of the parents in termination matters."

"(b) An admission to allegations or a written plea of nolo contendere signed by the respondent may be accepted by the judicial authority. Before accepting an admission or plea of nolo contendere, the judicial authority shall determine whether the right to trial has been waived, and that the parties understand the content and consequences of their admission or plea. If the allegations are admitted or the plea accepted, the judicial authority shall make its adjudicatory finding as to the validity of the facts alleged in the petition and may proceed to a dispositional hearing. Where appropriate, the judicial authority may permit a noncustodial parent or guardian to stand silent as to the entry of an adjudication."

[3] The petitioner does not cite to the record or append any relevant transcript to her appellate brief to support the aforementioned statement. The respondent does not, however, dispute that this occurred.

[4] According to the court's November 13, 2012 memorandum of decision, the respondent had a history of mental health issues, addiction problems, educational deficits, and a dysfunctional family origin. Her counsel thus wanted to emphasize that the respondent had stabilized her life by securing employment and housing.

[5] Practice Book § 42-2 provides: "When an information is divided into two parts under Section 36-14, on a finding of guilty on the first part of the information, a plea shall be taken and, if necessary, election made on the second part and the trial thereon proceeded with. If the defendant elects a jury trial on the second part of the information, such trial may be had to the same or to another jury as the judicial authority may direct."

[6] In fact, our Supreme Court in *Myers* clarified when plain error review is warranted. It cited the United States Supreme Court's decision in *Boykin* v. *Alabama*, 395 U.S. 238, 242–43, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969), which "concerned a criminal defendant . . . who was charged with common-law robbery, an offense that, at that time, was punishable by death in the state of Alabama. . . . At his arraignment, the petitioner pleaded guilty without being canvassed in any way by the trial judge or addressing the court. . . . The jury sentenced the petitioner to death . . . and the Alabama Supreme Court upheld the petitioner's conviction and death sentence." (Citations omitted; internal quotation marks omitted.) *State* v. *Myers*, supra, 290 Conn. 295–96.

In interpreting *Boykin*, our Supreme Court stated that "[u]nder these extreme circumstances, the United States Supreme Court reversed, concluding that it was plain error for the trial judge to accept [the] petitioner's

guilty plea without an affirmative showing that it was intelligent and voluntary. . . . The court equated the petitioner's guilty plea with a waiver of several of his constitutional rights, including the privilege against compulsory self-incrimination . . . the right to trial by jury . . . [and] the right to confront one's accusers . . . and declared that it could not presume a waiver of these three important federal rights from a silent record." (Citations omitted; internal quotation marks omitted.) Id., 296. We see no way in which the present situation rises to the level discussed in *Boykin*, nor has the respondent demonstrated as such.

[7] "The first two [prongs of *Golding*] involve a determination of whether the claim is reviewable; the second two . . . involve a determination of whether the defendant may prevail." (Internal quotation marks omitted.) *State* v. *Lavigne*, 307 Conn. 592, 599, 57 A.3d 332 (2012).

[8] The respondent relies primarily on *State ex rel. Children, Youth & Families Dept.* v. *Stella P.*, 127 N.M. 699, 705, 986 P.2d 495 (App. 1999), in which the court stated that "[m]inimum consideration of due process requires the children's court to inquire explicitly and on the record as to whether [the] [m]other validly intended to waive her right to contest the termination." This holding, set forth by the New Mexico Court of Appeals, is not binding on this court, and we, as an intermediary court, decline the opportunity to adopt such law for the state of Connecticut.

---