******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* HERIBERTO B.*
(AC 43966)

Alvord, Prescott and Flynn, Js.

*Syllabus*

The defendant, who had been convicted, on a plea of guilty, of two counts of the crime of risk of injury to a child, appealed to this court, claiming that the trial court improperly dismissed for lack of subject matter jurisdiction the first of two motions he had filed to correct an illegal sentence and violated his right to a jury trial. The defendant asserted in his first motion to correct that his sentence on both risk of injury counts violated the fifth amendment's prohibition of double jeopardy. Concurrently with that motion, he filed a motion for the appointment of counsel to assist him in preparing and filing a motion to correct an illegal sentence. The trial court appointed P, who found no merit to the issues raised in the first motion to correct. P then filed a second motion to correct an illegal sentence and to vacate the guilty plea on the ground that the defendant's plea to one of the two risk of injury counts was not made knowingly and voluntarily because the prosecutor's recitation of the factual basis for the plea with respect to that count had referenced a sexual assault that was not alleged in the arrest warrant or charged in the state's operative information. When the trial court then advised the defendant about the option of proceeding as a self-represented party if he wanted to pursue the claims in his first motion to correct, he stated that he did not intend to proceed as a self-represented party. The court then denied a motion the defendant had filed to discharge P and denied the second motion to correct an illegal sentence, concluding that the claims raised in the second motion were more properly brought in a petition for a writ of habeas corpus. *Held*:

1. This court declined to review the defendant's claim that the trial court improperly dismissed his first motion to correct an illegal sentence; the trial court could not, and did not, render judgment on the merits of that motion, as it was superseded by the second motion to correct an illegal sentence, which became operative when the defendant requested the appointment of counsel and then declined the trial court's invitation to proceed as a self-represented party.

2. This court declined to consider the defendant's unpreserved constitutional claim that his right to a jury trial was violated; contrary to the defendant's assertion that his claim was ripe for review under *State* v. *Golding* (213 Conn. 233) or reversal under the plain error doctrine set forth in the applicable rule of practice (§ 60-5), extraordinary review under *Golding* and § 60-5 was not warranted because the defendant did not first present his claim to the "judicial authority," which, in the rule of practice (§ 43-22) governing motions to correct an illegal sentence, means solely the trial court, not the appellate courts of this state, and this court's decision to decline review of the defendant's claim would not result in hardship or injustice to him, as he may seek and obtain any appropriate redress for an illegal sentence before the trial court, which is in a superior position to fashion such a remedy.

Argued April 6—officially released August 31, 2021

*Procedural History*

Substitute information charging the defendant with six counts of the crime of sexual assault in the first degree, five counts each of the crimes of risk of injury to a child and unlawful restraint in the first degree, four counts each of the crimes of sexual assault in the third degree and threatening in the second degree, and three counts of the crime of aggravated sexual assault of a minor, brought to the Superior Court in the judicial district of New Britain, where the defendant was pre-

sented to the court, *Alexander, J.*, on pleas of guilty to two counts of risk of injury to a child; thereafter, the state entered a nolle prosequi as to the remainder of the charges; judgment of guilty; subsequently, the court, *Keegan, J.*, denied the defendant's motion to correct an illegal sentence, and the defendant appealed to this court; thereafter, the court, *Keegan, J.*, issued a corrected judgment dismissing the defendant's motion to correct an illegal sentence. *Affirmed.*

*John L. Cordani, Jr.*, assigned counsel, with whom, on the brief, was *Andrew A. DePeau*, assigned counsel, for the appellant (defendant).

*Rocco A. Chiarenza*, assistant state's attorney, with whom, on the brief, were *Brian W. Preleski*, state's attorney, and *Helen J. McLellan*, senior assistant state's attorney, for the appellee (state).

*Opinion*

ALVORD, J. The defendant, Heriberto B., appeals from the judgment of the trial court dismissing his motion to correct an illegal sentence and to vacate his pleas on the ground that the court lacked subject matter jurisdiction to consider the motion. On appeal, the defendant claims that the trial court (1) improperly dismissed, for lack of subject matter jurisdiction, the first motion to correct an illegal sentence that he filed, and (2) violated his constitutional right to a jury trial under *Alleyne* v. *United States*, 570 U.S. 99, 133 S. Ct. 2151, 186 L. Ed. 2d 314 (2013). We affirm the judgment of the trial court.

The following facts and procedural history are relevant to this appeal. In an affidavit by the police in support of their application for a warrant for the defendant's arrest, the defendant was accused of sexually assaulting the victim, a child under the age of thirteen, on multiple occasions from November, 2012, through September 22, 2013. In connection with those allegations, the state charged the defendant in a twenty-seven count substitute, long form information with, inter alia, two counts of risk of injury to a child in violation of General Statutes § 53-21 (a) (2).[1]

In count eleven of the operative information, the state "accuse[d] the [defendant] of the crime of injury or risk of injury to or impairing the morals of a child, and allege[d] that on divers[e] dates between November 1, 2012, and September 21, 2013, between the hours of 6:30 a.m. and 4:30 p.m., on a Sunday, at a certain residence located within the city of New Britain, Connecticut . . . the [defendant] had contact with the intimate parts, including, but not limited to, the breasts, genital area, groin, inner thighs and buttocks of a child under the age of thirteen years . . . and subjected said child to contact with the intimate parts of said [defendant], specifically, his penis, all in a sexual and indecent manner likely to impair the health or morals of such child, said acts having occurred within the bedroom of said child, and all such acts were committed in violation of [§] 53-21 (a) (2) . . . ."

In count twenty-three of the operative information, the state "further accuse[d] the [defendant] of the crime of injury or risk of injury to or impairing the morals of a child, and allege[d] that, *on or about Sunday, September 22, 2013*, between the hours of 6:30 a.m. and 4:30 p.m., at a certain residence located within the city of New Britain, Connecticut, the [defendant] had contact with the intimate parts, including, but not limited to, the breasts, the genital area, the groin, the inner thighs and buttocks, of a child under the age of thirteen years . . . and subjected said child to contact with the intimate parts of said [defendant], specifically, his penis, all in a sexual and indecent manner likely to impair the health

or morals of such child, said acts having occurred within the bedroom of said child, and all acts were committed in violation of [§] 53-21 (a) (2) . . . ." (Emphasis added.)

On July 20, 2016, the defendant, represented by counsel, entered *Alford* pleas[2] with respect to the two counts of risk of injury to a child.[3] During the plea proceeding, the prosecutor articulated the following factual basis for the defendant's pleas: "The first count, count eleven, that he pleaded to that had to do with his sexual contact and intercourse with a ten year old female . . . . It happened on diverse dates between November 1, 2012, and September 21, 2013. The defendant had moved in with the family. The mother had three children. This was the older of the three daughters. It was the only one involved. Apparently, the mother had to work on occasional Sundays, and, since she didn't have a baby-sitter, she had [the defendant] watch the children. He took advantage of the situation to have intercourse and touching all the intimate parts of the child under thirteen years and also had her [make] contact with his penis, all in a sexual manner. *The second* [*count to which the defendant pleaded*] . . . *was count twenty-three, and that was on a specific date, and that was November 22, 2013*, same situation on a Sunday while the mother was at work, that it occurred in the bedroom, like the other one, of the young girl. He touched her all over and finally subjected her to penile . . . intercourse in her bedroom, and . . . some of the bedclothes were tested, and his DNA was found to be on a bedsheet and a blanket. . . . By that time . . . [the victim] was under thirteen years of age. . . . She would have been twelve." (Emphasis added.)

Thereafter, the defendant acknowledged his understanding of the facts that the state would have to prove for him to be found guilty of the two counts of risk of injury to a child, as well as his understanding of the definition of the charge. The court, *Alexander, J.*, found the defendant's pleas to be knowingly and voluntarily made, and that there was a factual basis for each plea. Accordingly, the court accepted the defendant's *Alford* pleas and found him guilty of two counts of risk of injury to a child. On October 20, 2016, with respect to each count and in accordance with the plea agreement, the court imposed identical sentences of seven years of incarceration, five years of which was mandatory under each sentence, followed by five years of special parole under each sentence. The court ordered the sentences to run consecutively to one another for a total effective sentence of fourteen years of incarceration, ten years of which was mandatory, followed by ten years of special parole.[4]

On March 7, 2019, the defendant, as a self-represented party, filed a motion to correct an illegal sentence pursuant to Practice Book § 43-22[5] (first motion to correct),

in which he claimed, inter alia, that his sentence on the two counts of risk of injury to a child was illegal because it violated his federal constitutional protection against double jeopardy (double jeopardy claim).[6] Specifically, the defendant argued that his sentence was illegal because "[f]orcing [him] to defend against two counts of risk of injury for a single act against one victim is in direct opposition to the fifth amendment [to] the United States constitution, which states . . . 'nor shall any person be subject for the same offense to be twice put in jeopardy of life and limb.' "

Concurrently with his first motion to correct, the defendant filed a motion for appointment of counsel pursuant to General Statutes § 51-296 to assist in preparing and filing a motion to correct an illegal sentence.[7] Thereafter, the court appointed Attorney William H. Paetzold to represent the defendant. After his review of the issues raised by the defendant in the first motion to correct, Paetzold found no merit to that motion. Specifically, with respect to that motion, Paetzold explained that the defendant "continues to want me to litigate issues that I believe are habeas corpus related issues and are not subject to a motion to correct an illegal sentence."

Instead of pursuing the defendant's first motion to correct, on August 29, 2019, Paetzold filed a subsequent motion to correct an illegal sentence and to vacate the pleas on behalf of the defendant (second motion to correct), which contained an issue that he "thought might have some merit." In the second motion to correct, the defendant claimed that his sentence was illegal because there was no factual basis to support his *Alford* plea to count twenty-three of the state's operative information and, thus, his plea to one count of risk of injury to a child was not made knowingly and voluntarily. More specifically, the defendant argued that the state's recitation of the factual basis for his plea with respect to count twenty-three erroneously referenced a November 22, 2013 sexual assault that was not alleged in the arrest warrant or charged in the state's operative information.[8] Accordingly, the defendant maintained that the court erred by relying on an inadequate factual basis in accepting his *Alford* plea as to count twenty-three.

On October 10, 2019, the state filed an objection to the second motion to correct. In its objection, the state argued that "the defendant's attack on the factual basis for the plea falls outside the parameters of the grounds permitted to be raised in a motion to correct." The state alternatively maintained that the defendant's claim failed on its merits because his "pleas were fully canvassed before being accepted by the court, and the record supports a factual basis for the elements of the crimes [of] which [he] was convicted."[9]

On November 13, 2019, the defendant, as a self-represented party, filed a motion to discharge Paetzold, his

appointed counsel. In support of that motion, the defendant argued, inter alia, that he "recently filed a motion to correct an illegal sentence, which is pending before the court, concerning which . . . Paetzold has failed to raise challenge or objection on the state's action of sentencing the [defendant] twice on the same docket number by implication of an unsubstantiated, unproven charge." Accordingly, the defendant requested that "Paetzold be replaced."

On November 18, 2019, the court, *Keegan, J.*, held a hearing with respect to "two different motions in this case . . . ." The court stated: "I have a motion here filed by . . . Paetzold, motion to correct illegal sentence and vacate the plea, and that's dated August 28, 2019. Then, in October, the state filed an objection to the motion to correct illegal sentence and vacate plea, and now [the defendant] [has] a motion to fire . . . Paetzold." The court then engaged in the following colloquy with the defendant:

"The Court: Okay. Now . . . I'm sure that Judge Alexander told you when you originally filed your motion to correct [an] illegal sentence that it would be assigned to an attorney from the Office of the Public Defender for review and that, if they believed there was an issue that was worthy of being considered for a motion to correct illegal sentence hearing, that the attorney would stay on with you. And if they found that there was no basis for it, that you would have to represent yourself, correct?

"The Defendant: Yeah.

"The Court: Okay. And let me just take this procedurally, okay. . . . Is it your intention to argue this motion to correct [an] illegal sentence by yourself? . . .

"The Defendant: I wanted the court [to] give me the different attorney.

"The Court: No, you . . . don't get a different attorney. . . .

"The Defendant: Your Honor . . . he no represent me the . . . way he's supposed.

"The Court: No . . . he's probably not representing you the way you want, is that correct?

"The Defendant: He's supposed to do . . . what I say. . . .

"The Court: Do you have a law degree? . . .

"The Defendant: No, I learn by myself."

The court then had the following colloquy with Paetzold:

"The Court: . . . [Y]ou have examined [the defendant's] original claim. I have that. It's a handwritten-out motion from March of 2019.

"Attorney Paetzold: Yes.

"The Court: You filed a motion to correct [an] illegal sentence and vacate plea. Were there any other grounds in your legal opinion [that] should have been raised in this motion to correct [an] illegal sentence and vacate plea?

"Attorney Paetzold: Your Honor, [the defendant] has brought a number of issues to my attention. And as I explained to [the defendant] several times, those issues that he wants to pursue are issues involving habeas corpus, ineffective assistance of counsel, things that his trial counsel failed to do. They're not subject to correcting an illegal sentence. And I tried explaining that to [the defendant]. I also found an issue that I thought might have some merit . . . .

"The Court: Is this the claim . . . that there's no factual basis to support the plea to risk of injury to a minor because it erroneously references a November, 2013 event, and the state has indicated that that was an error on the part of the state. It should have been . . . September, 2013.

"Attorney Paetzold: Yes."[10]

With that background, the court explained to the defendant: "[A]n illegal sentence is a very defined category of a reason to vacate a guilty plea. It has to exceed the maximum statutory limits for a crime, if it does not satisfy the mandatory minimum for a crime, if it violates double jeopardy rights, if the sentence is ambiguous or internally contradictory. Those are illegal sentences. Now, when there is something that happened at a trial or during the course of representation leading up to your guilty plea and sentencing, that is not an issue that's brought up during a motion to correct an illegal sentence. That is brought up during a petition for a [writ of] habeas corpus where you can make a claim to the court that the representation of your attorney fell below the limit and . . . the level that we recognize in court as effective assistance. And so what I'm hearing from . . . Paetzold, who is a very experienced attorney . . . [is] that the claims that you want to bring up are claims that are not for a motion to correct [an] illegal sentence, but they are habeas corpus claims." Ultimately, the court concluded: "So, based on the information that I have in front of me, I'm not letting . . . Paetzold withdraw. I am going to accept his argument today and the . . . motion that he prepared, I have read the state's objection. And so I have denied [the defendant's] motion to fire . . . Paetzold. I have denied the motion to correct [an] illegal sentence."[11] This appeal followed.

I

The defendant first claims that the trial court improperly dismissed his first motion to correct for lack of

subject matter jurisdiction because it raised "a well established type of double jeopardy claim" related to his sentencing on the two counts of risk of injury to a child. The defendant further asserts that "[i]t is equally well established that [a] sentence that violates a defendant's right against double jeopardy falls within the recognized definition of an illegal sentence correctable under Practice Book § 43-22." (Internal quotation marks omitted.) In response, the state argues that the defendant cannot resurrect the double jeopardy claim contained in his first motion to correct, which was deemed meritless by Paetzold. The state maintains that the double jeopardy claim was not included in the claims asserted by Paetzold on behalf of the defendant in the second motion to correct, and was not litigated by the parties or properly before by the court. We agree with the state and decline to review the defendant's claim.

Our discussion of the defendant's claim that the court improperly dismissed his first motion to correct is informed by the underlying procedural posture. In *State* v. *Casiano*, 282 Conn. 614, 627–28, 922 A.2d 1065 (2007), our Supreme Court recognized that, under § 51-296 (a), a defendant who wants to file a motion to correct an illegal sentence "has a right to the appointment of counsel for the purpose of determining whether . . . [there exists] a sound basis for doing so. If appointed counsel determines that such a basis exists, the defendant also has the right to the assistance of such counsel for the purpose of preparing and filing such a motion . . . ." In *State* v. *Francis*, 322 Conn. 247, 267–68, 140 A.3d 927 (2016), our Supreme Court expounded on the procedure with respect to the withdrawal of appointed counsel's representation: "If, after consulting with the defendant and examining the record and relevant law, counsel determines that no sound basis exists for the defendant to file such a motion, he or she must inform the court and the defendant of the reasons for that conclusion, which can be done either in writing or orally. If the court is persuaded by counsel's reasoning, it should permit counsel to withdraw and advise the defendant of the option of proceeding as a self-represented party."

At the defendant's request and pursuant to § 51-296 (a), Paetzold was appointed for the purpose of determining whether there existed a sound basis for filing a motion to correct an illegal sentence on behalf of the defendant. Paetzold determined that there was a sound basis for pursuing such a motion and, in accordance with the scope of his representation as set forth in *Casiano*, filed the second motion to correct on behalf of the defendant. Paetzold further represented to the court that, after reviewing the claims contained in the first motion to correct, there were no other sound bases that should have been raised in the second motion to correct. Before mentioning the first motion to correct, the court identified the second motion to correct as the operative motion before it for consideration. Consistent

with the procedure set forth in *Francis* and in light of Paetzold's determination that the claims contained in the first motion to correct were without merit, the court advised the defendant of the option of proceeding as a self-represented party if he instead chose to pursue the claims contained therein. In response, the defendant indicated that he did not intend to proceed as a self-represented party in pursuing the first motion to correct. Moreover, although the defendant expressed his desire for substitute counsel, he clarified that he wanted to pursue a motion to correct an illegal sentence on the ground that he "got sentenced for something [he had] never [been] charged [with]." That ground was consistent with the claim raised by Paetzold in the second motion to correct. On the basis of this information, the court denied the defendant's motion to discharge appointed counsel, accepted the second motion to correct as the operative motion, and ultimately dismissed that motion.

The defendant's actions of requesting the appointment of counsel and subsequently declining the court's invitation to proceed as a self-represented party necessarily rendered operative the second motion to correct. See *State* v. *Henderson*, 307 Conn. 533, 546, 55 A.3d 291 (2012) ("The right to counsel and the right to self-representation present mutually exclusive alternatives. . . . [S]ince the two rights cannot be exercised simultaneously, a defendant must choose between them."); see also *State* v. *DeFreitas*, 179 Conn. 431, 446 n.4, 426 A.2d 799 (1980) (When counsel appears on behalf of the defendant, the defendant's attempt to interject issues inconsistent with counsel's strategic decisions must be rejected because, "[i]f . . . trial counsel could employ one trial tactic, and if that failed, then the defendant pro se could adopt another trial tactic, the trial court could be caught between two opposing positions. This would be a species of trial by ambuscade, a tactic which this court has been quick to disapprove."). In other words, the second motion to correct superseded the first motion to correct. Because the first motion to correct was not properly before the court, the court could not and, therefore, did not, render judgment on the merits of that motion.[12] Accordingly, we decline to review the defendant's claim.

II

The defendant next claims that his right to a jury trial under the sixth amendment to the United States constitution was violated, pursuant to *Alleyne* v. *United States*, supra, 570 U.S. 99,[13] because he was subjected to an enhanced mandatory minimum sentence for the crime of risk of injury to a child in the absence of a waiver of his right to a jury finding or a specific plea to the relevant fact necessary to trigger the enhancement.[14] The defendant argues that, although "this issue was not raised in the trial court, it is ripe for review under *State*

v. *Golding*, 213 Conn. 233, [567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015)], and for reversal under the . . . plain error doctrine" set forth in Practice Book § 60-5. The state responds that the defendant's claim is unreviewable because, "in the context of a motion to correct an illegal sentence, the only court with the authority to correct such a sentence is the trial court," and, "[t]herefore, any claim not first presented to the trial court in a properly filed motion to correct cannot be used as a basis to alter a defendant's sentence in an appeal from such a motion." We conclude that the defendant's claim is not entitled to review under *Golding* or the plain error doctrine and, accordingly, we decline to consider it.

"Under *Golding*, a [party] can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the [party] of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the [party's] claim will fail. The appellate tribunal is free, therefore, to respond to the [party's] claim by focusing on whichever condition is most relevant in the particular circumstances." (Internal quotation marks omitted.) *In re Riley B.*, 203 Conn. App. 627, 636, 248 A.3d 756, cert. denied, 336 Conn. 943, 250 A.3d 40 (2021). "An appellant may obtain review under the plain error doctrine upon a showing that failure to remedy an obvious error would result in manifest injustice." *State* v. *Starks*, 121 Conn. App. 581, 591, 997 A.2d 546 (2010); see also *State* v. *Myers*, 290 Conn. 278, 289, 963 A.2d 11 (2009) ("[an appellant] cannot prevail under [the plain error doctrine] . . . unless he demonstrates that the claimed error is both so clear and so harmful that a failure to reverse the judgment would result in manifest injustice" (internal quotation marks omitted)).

In support of his argument that his unpreserved constitutional claim is reviewable, the defendant maintains that, pursuant to Practice Book § 43-22, "[t]he judicial authority may *at any time* correct an illegal sentence . . . ." (Emphasis added.) The defendant relies on the interpretation of § 43-22 set forth in *State* v. *Cator*, 256 Conn. 785, 781 A.2d 285 (2001), which determined that the term "judicial authority" provides "[b]oth the trial court and [an appellate] court, on appeal, have the power, at any time, to correct a sentence that is illegal." (Internal quotation marks omitted.) Id., 804. As the state correctly mentions, however, in *Cobham* v. *Commissioner of Correction*, 258 Conn. 30, 779 A.2d 80 (2001), our Supreme Court clarified: "We recognize that this court previously has suggested that the language 'judi-

cial authority,' found in § 43-22, included the appellate courts as well as the trial court that had ordered the sentence. . . . Today we clarify the meaning of 'judicial authority' in § 43-22, however, to mean solely the trial court." (Citations omitted.) Id., 38 n.13. Accordingly, the judicial authority that may, at any time, correct an illegal sentence pursuant to § 43-22 "refer[s] to the trial court, not the appellate courts of this state." *State* v. *Starks*, supra, 121 Conn. App. 591.

In *State* v. *Starks*, supra, 121 Conn. App. 581, this court declined to grant review under *Golding* or the plain error doctrine of an unpreserved claim of constitutional error on appeal from the denial of a motion to correct an illegal sentence. The court reasoned that "[o]ur rules of practice confer the authority to correct an illegal sentence on the trial court, and that court is in a superior position to fashion an appropriate remedy for an illegal sentence. . . . Furthermore, the defendant has the right, at any time, to file a motion to correct an illegal sentence and raise [a] double jeopardy claim before the trial court. Typically, our appellate courts afford review under *Golding* or the plain error doctrine in circumstances in which the failure to undertake such an extraordinary level of review, effectively, would preclude an appellant from obtaining *any* judicial review of the claim raised. That is not the case here." (Citation omitted; emphasis in original.). Id., 592; see also *State* v. *Syms*, 200 Conn. App. 55, 59–60, 238 A.3d 135 (2020) (declining to grant *Golding* review of unpreserved claim of constitutional error on appeal from denial of motion to correct illegal sentence under same reasoning); *State* v. *Brescia*, 122 Conn. App. 601, 605 n.3, 999 A.2d 848 (2010) (same).

In the present case, the defendant may seek and obtain any appropriate redress for an illegal sentence before the trial court, which is in a superior position to fashion such a remedy. As in *Starks*, we are not persuaded that extraordinary review of the defendant's claim under *Golding*[15] or the plain error doctrine is warranted or that our declining to review the claim would result in any hardship or injustice to the defendant. We, therefore, decline to consider it.

The judgment is affirmed.

In this opinion the other judges concurred.

* In accordance with our policy of protecting the privacy interests of the victims of the crime of risk of injury to a child, we decline to use the defendant's full name or to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

[1] General Statutes § 53-21 (a) provides in relevant part: "Any person who . . . (2) has contact with the intimate parts, as defined in section 53a-65, of a child under the age of sixteen years or subjects a child under sixteen years of age to contact with the intimate parts of such person, in a sexual and indecent manner likely to impair the health or morals of such child . . . shall be guilty of . . . a class B felony . . . except that, if . . . the victim of the offense is under thirteen years of age, such person shall be sentenced to a term of imprisonment of which five years of the sentence imposed may not be suspended or reduced by the court."

[2] "Under *North Carolina* v. *Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed.

2d 162 (1970), a criminal defendant is not required to admit his guilt, but consents to being punished *as if he were guilty* to avoid the risk of proceeding to trial. . . . A guilty plea under the *Alford* doctrine is a judicial oxymoron in that the defendant does not admit guilt but acknowledges that the state's evidence against him is so strong that he is prepared to accept the entry of a guilty plea nevertheless. The entry of a guilty plea under the *Alford* doctrine carries the same consequences as a standard plea of guilty. By entering such a plea, a defendant may be able to avoid formally admitting guilt at the time of sentencing, but he nonetheless consents to being treated as if he were guilty with no assurances to the contrary." (Emphasis in original; internal quotation marks omitted.) *State* v. *Simpson*, 329 Conn. 820, 824 n.4, 189 A.3d 1215 (2018).

[3] The plea agreement was that the defendant would enter *Alford* pleas to counts eleven and twenty-three of the operative information, charging him with two counts of risk of injury to a child, and that the state would enter dispositions of nolle prosequi on the remaining charges. The sentencing recommendation to the court was that the defendant serve a maximum total effective sentence of fifteen years of incarceration, with the defendant having a right to argue for a minimum of seven years, followed by ten years of special parole.

[4] Specifically, the court, *Alexander, J.*, sentenced the defendant as follows: "On the first count of risk of injury to a minor, [§] 53-21 (a) (2), it is the sentence of the court that [the defendant] receive seven years to serve. It will be followed by five years of special parole. Five years is considered a mandatory minimum. On the second count of risk of injury to a minor, [§] 53-21 (a) (2), it is the sentence of the court that [the defendant] receive seven years to serve. That sentence will be followed by five years of special parole. Five years is a mandatory minimum. Those sentences run consecutively for the effective sentence of fourteen years to serve, ten years being a mandatory minimum, followed by ten years of special parole."

[5] Practice Book § 43-22 provides: "The judicial authority may at any time correct an illegal sentence or other illegal disposition, or it may correct a sentence imposed in an illegal manner or any other disposition made in an illegal manner."

[6] In his first motion to correct, the defendant also claimed that (1) the state's use of certain words to describe his conduct "tarnish[ed] his image in an unlawful way," (2) evidence undermined the credibility of the victim's allegations, and (3) special parole constituted a separate sentence from the period of incarceration imposed and, thus, violated his federal constitutional protection against double jeopardy.

[7] General Statutes § 51-296 (a) provides in relevant part: "In any criminal action . . . the court before which the matter is pending shall, if it determines after investigation by the public defender or his office that a defendant is indigent as defined under this chapter, designate a public defender, assistant public defender or deputy assistant public defender to represent such indigent defendant . . . ."

In *State* v. *Francis*, 322 Conn. 247, 140 A.3d 927 (2016), our Supreme Court explained that "a defendant who wishes to file a motion to correct an illegal sentence has a [statutory] right [under § 51-296 (a)] to the appointment of counsel for the purpose of determining whether . . . [there exists] a sound basis for doing so. If appointed counsel determines that such a basis exists, the defendant also has the right to the assistance of such counsel for the purpose of preparing and filing such a motion and, thereafter, for the purpose of any direct appeal from the denial of that motion." (Internal quotation marks omitted.) Id., 260.

[8] Paetzold noted that the last incident of sexual assault, as alleged by the state, occurred on Sunday, September 22, 2013.

[9] The state did not address the claims raised in the defendant's first motion to correct.

[10] During the hearing and consistent with its objection to the second motion to correct, the state solely addressed the claim asserted by Paetzold in the second motion to correct. Specifically, the prosecutor argued that, "based on the transcripts and the information before the court, the court clearly had a factual basis for the pleas pursuant to the plea agreement." The prosecutor further argued that the court should reject the second motion to correct because "[t]he sentence of the court was legal. It's within statutory limits. It is consistent with the plea agreement reached by the parties, and the record clearly demonstrates an adequate factual basis for the defendant's pleas. The court canvassed the pleas, accepted them. The matter was set down for sentencing where the defendant would have the right to address

the court. The victim spoke to the court. The court had the presentence investigation, the warrant affidavit, and heard argument from both counsel.''

[11] Thereafter, on August 20, 2020, the court corrected the form of the judgment on the defendant's second motion to correct and "enter[ed] a dismissal, rather than a denial, of the motion.'' The court explained that "[t]he motion attacks the plea and not the sentence or the sentencing proceeding and, therefore, the court lacks jurisdiction.''

[12] The defendant incorrectly claims that the court dismissed his first motion to correct for lack of subject matter jurisdiction. To support his position, the defendant references a single statement contained in the "amended criminal judgment file,'' prepared by the court clerk, which indicates that "both motions to correct [an] illegal sentence were denied after argument by Judge Keegan on [November 18, 2019].'' We note, however, that during the November 18, 2019 hearing, the court specifically referenced the second motion to correct as the relevant motion to be considered, expressly accepted the second motion to correct as the operative motion before it, and subsequently rendered judgment on "*the motion* to correct [an] illegal sentence.'' (Emphasis added.) Moreover, the correction to the form of the judgment issued by the court on August 20, 2020; see footnote 11 of this opinion; was specifically captioned with respect to the "motion to correct an illegal sentence/*vacate plea*,'' and, in that correction, the court rendered a "dismissal, rather than a denial, of *the motion*.'' (Emphasis added.)

We note that a meticulous review of the case file reveals a November 18, 2019 order signed by Judge Keegan immediately following the first motion to correct, which stated that, "after considering in its totality the defendant's motion to correct an illegal sentence [it is] ordered: denied.'' We view this document as a denial not on the merits of the first motion to correct, but as simply a denial on procedural grounds and a reflection that the court could not properly adjudicate that motion in light of the fact that it had been superseded by the second motion to correct. "[T]he construction of [an order or] judgment is a question of law . . . [and] our review . . . is plenary.'' (Internal quotation marks omitted.) *Avery* v. *Medina*, 174 Conn. App. 507, 517, 163 A.3d 1271, cert. denied, 327 Conn. 927, 171 A.3d 61 (2017). We, therefore, find the defendant's contention misplaced.

[13] In *Alleyne* v. *United States*, supra, 570 U.S. 103, the United States Supreme Court held that "any fact that increases the mandatory minimum is an 'element' that must be submitted to the jury'' and proved beyond a reasonable doubt. See also *State* v. *Evans*, 329 Conn. 770, 790, 189 A.3d 1184 (2018) ("[a] guilty plea to an underlying offense does not, in the absence of a specific plea to the specific facts necessary to trigger an enhanced sentence, operate to waive the defendant's right to that specific finding''), cert. denied,    U.S.   , 139 S. Ct. 1304, 203 L. Ed. 2d 425 (2019).

[14] General Statutes § 53-21 (a) provides in relevant part that a person who commits a violation of § 53-21 (a) (2) shall be guilty of a class B felony, "except that, if . . . the victim of the offense is under thirteen years of age, such person shall be sentenced to a term of imprisonment of which five years of the sentence imposed may not be suspended or reduced by the court.''

[15] We acknowledge that our Supreme Court in *State* v. *McCleese*, 333 Conn. 378, 425 n.23, 215 A.3d 1154 (2019), and *State* v. *Evans*, 329 Conn. 770, 809 n.27, 189 A.3d 1184 (2018), cert. denied,    U.S.   , 139 S. Ct. 1304, 203 L. Ed. 2d 425 (2019), and this court in *State* v. *Arnold*, 205 Conn. App. 863, 868 n.9,    A.3d    (2021), had reviewed unpreserved claims with respect to motions to correct an illegal sentence under *Golding. McCleese* and *Evans*, however, declined to overrule *State* v. *Starks*, supra, 121 Conn. App. 581, and do not compel our review of the defendant's unpreserved claim in this instance.

————————————————————